STATE ex rel. PRAXAIR, INC., AG Processing, Inc., a Cooperative, and Sedalia Industrial Energy Users' Association, Appellants,

Office of the Public Counsel, Appellant,

v.

MISSOURI PUBLIC SERVICE COMMISSION, Great Plains Energy, KCP & L, KCP & L Greater Missouri Operations Co., Respondents.

No. SC 91322.

Supreme Court of Missouri, En Banc.

July 19, 2011.

Rehearing Denied Aug. 30, 2011.

David L. Woodsmall, Stuart W. Conrad, Finnegan, Conrad & Peterson LC, Jefferson City, for Praxair, AG Processing and Sedalia Industrial Energy Users' Association.

Lewis R. Mills Jr., Jefferson City, for Office of the Public Counsel.

Jennifer Heintz, Stephen C. Reed, The Commission in Jefferson City, for Public Service Commission.

Karl Zobrist and Daniel Morris of SNR Denton U.S. LLP in Kansas City, for Great Plains Energy, KCP & L and KCP & L operations.

Roger W. Steiner of the Kansas City Power & Light Company in Kansas City, for KCP & L and KCP & L operations.

LAURA DENVIR STITH, Judge.

Praxair, Inc., AG Processing, Inc., a cooperative, and Sedalia Industrial Energy Users' Association (for convenience, collectively "Praxair") appeal the Public Service Commission's (PSC's) approval of Great Plains Energy, Inc.'s acquisition of Aquila, Inc., a Missouri utility company. Praxair argues that the PSC improperly failed to consider Great Plains' allegedly inadequate gift policy, a policy that, Praxair asserts,

should have caused the merger to be rejected. Further, Praxair argues that the regulatory law judge erred in precluding Praxair from making an offer of proof as to Great Plains' gift policy, as it prevents this Court from considering whether the gift policy was relevant and material to the merger decision.

While the Court agrees that section 536.070(7)[1] gives the regulatory law judge the discretion to preclude a testimonial offer of proof when, as here, he finds the offered evidence to be "wholly irrelevant," he erred in failing to allow a written offer of proof to be made as to Great Plains' gift policy. Were such an offer of proof not permitted, the decision to exclude evidence as "wholly irrelevant" itself would be wholly unreviewable by the courts, and, therefore, would violate article V, section 18 of the Missouri Constitution and section 386.510, both of which provide for judicial review of PSC decisions. Here, however, this Court directed the parties to file a written offer of proof and any response thereto directly in this Court. The Court finds that while the evidence as to Great Plains' gift policy should have been admitted, its exclusion was not prejudicial as the gift policy could not have substantially impacted the weight of the evidence evaluated to approve the merger.

The Office of Public Counsel separately appeals the denial of its motion to dismiss the application for approval of the merger. Public Counsel argues that the PSC decision cannot stand because certain of the PSC commissioners who heard the merger application had been subject to inappropriate *ex parte* contact with executives from Great Plains at various meetings held approximately three months prior to the filing of the application for approval of this merger. He argues that this created an appearance of impropriety and that an ap-

pearance of impropriety creates a basis for recusal under the Code of Judicial Conduct. Public Counsel argues that the Code of Judicial Conduct applies to PSC commissioners just as much as it applies to judges and that this Court should hold that it was improper for the commissioners to decide the merger question.

This Court agrees that a failure to recuse after *ex parte* meetings concerning specific cases that are to be filed before the PSC creates an appearance of impropriety and that the appearance of impropriety is a basis for recusal under the Code of Judicial Conduct. But, although the PSC commissioners act in a quasi-judicial capacity, they are not judges, but members of the executive branch of government. The Code of Judicial Conduct does not govern their actions. Due process considerations nonetheless require an impartial arbiter. Public Counsel does not suggest that the *ex parte* meetings resulted in actual bias, however, and presented no evidence that could support a finding of actual bias. Moreover, the record is clear that those involved believed that the contacts were not inappropriate and did not require recusal where no case had yet been filed. Public Counsel has not overcome the presumption that the PSC acted impartially.

The judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late January 2007, a series of four or five meetings were held between members of the PSC and executives of Great Plains and the Kansas City Power and Light Company (KCPL), a subsidiary of Great Plains. Each meeting was held with just one or two commissioners attending, although ultimately, all five of the then-

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

serving commissioners were present for at least one meeting. Two of the three commissioners who ultimately decided this case participated in these meetings. No notice was given to the public or to Public Counsel about these meetings, which were intended to allow the utility executives to notify the commissioners of the contemplated transaction and preview issues that would be raised by the impending joint application. Those involved believed that such meetings were not improper because until a proceeding was filed with the PSC, there was no ongoing case and, therefore, no prohibition against *ex parte* discussions.

On February 7, 2007, Great Plains and Aquila announced the planned merger. On April 4, 2007, Great Plains, KCPL and Aquila filed a joint application with the PSC requesting authority for a series of transactions by which Great Plains would acquire the stock of Aquila and operate Aquila as a separate, wholly-owned subsidiary. If approval were granted, Aquila and KCPL both would operate as subsidiaries of Great Plains.

Praxair intervened. Evidentiary hearings at the PSC began on December 3, 2007, but were halted at the request of Great Plains, KCPL and Aquila. Thereafter, one commissioner who had been present for at least one of the pre-filing meetings recused himself. On December 13, 2007, Public Counsel filed a motion to dismiss on the grounds that three of the remaining four commissioners then hearing the case had been present at one or more pre-filing meetings and should have recused themselves because of the alleged impropriety of those meetings. The PSC denied the motion on January 2, 2008.

The evidentiary hearings resumed on April 21, 2008 and, in non-consecutive sessions, concluded on June 11, 2008. Also in April 2008, Great Plains, KCPL and Aquila filed a motion to limit the scope of the proceedings. Among other things, they sought to preclude any evidence as to their gift and gratuity policies.

On April 24, 2008, the regulatory law judge who acted as presiding officer at the hearing ruled that evidence as to the gift and gratuity policies would be excluded.[2] He further found that the evidence was "wholly irrelevant" to the merger because the PSC does not dictate gift policies of utilities it regulates and, on that basis, precluded the parties from making an offer of proof as to the excluded gift and gratuities policy evidence.

On July 1, 2008, the PSC, with only three commissioners participating, issued its 285-page report and order approving the merger by a 2–1 vote. Two commissioners, only one of whom was present at a pre-filing meeting, voted to approve the merger. One commissioner, who also had been present at a pre-filing meeting, voted against approval. Praxair and Public Counsel timely filed applications for rehearing. On July 14, 2008, the July 1, 2008, report and order became effective.[3] On August 5, 2008 the PSC denied all pending applications for rehearing.

Petitions for writs of review were filed in Cole County circuit court by Praxair and Public Counsel. After briefing and argument, the circuit court issued its judgment affirming the order. Praxair and the Public Counsel appealed. After opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, § 10.*

---

2. Section 386.240 permits the PSC to delegate rulings on the admissibility of evidence to a presiding officer who acts as a regulatory law judge.

3. Because of the approval of the acquisition of Aquila, Great Plains now holds both KCPL and Aquila, which it has renamed "KCPL Greater Missouri Operations."

## II. STANDARD OF REVIEW

 This Court reviews the decision of the PSC rather than that of the circuit court. *Environmental Utilities, LLC v. Public Serv. Comm'n*, 219 S.W.3d 256, 263 (Mo.App.2007). Under section 386.510, "the appellate standard of review of a PSC order is two-pronged: 'first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable.'" *State ex rel. AG Processing, Inc. v. Public Serv. Comm'n*, 120 S.W.3d 732, 734 (Mo. banc 2003), *quoting, State ex rel. Atmos Energy Corp. v. Public Serv. Comm'n*, 103 S.W.3d 753, 759 (Mo. banc 2003). "The burden of proof is upon the appellant to show that the order or decision of the PSC is unlawful or unreasonable." *AG Processing*, 120 S.W.3d at 734. The lawfulness of an order is determined "by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo." *Id.* "The decision of the [PSC] is reasonable where the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious or where the [PSC] has not abused its discretion." *Environmental Utilities*, 219 S.W.3d at 265.

## III. PARTIES ARE ENTITLED TO MAKE A WRITTEN OFFER OF PROOF EVEN AS TO EVIDENCE EXCLUDED AS "WHOLLY IRRELEVANT"

 Great Plains and Aquila are regulated utilities that, under section 393.190.1, must obtain approval from the PSC for their proposed merger. As noted, there are two components to this review, lawfulness and reasonableness. Praxair contends on appeal that the PSC's order was unreasonable. "Reasonableness turns on the standard used to evaluate a merger subject to approval by the PSC, which is whether or not the merger would be 'detrimental to the public.'" *State ex rel. AG Processing*, 120 S.W.3d at 735. In the merger context, a PSC decision will be held unreasonable if the PSC erroneously ignores evidence that "may have substantially impacted the weight of the evidence evaluated to approve the merger." *Id.* at 736.

Here, Praxair contends that the PSC order was unreasonable because the PSC failed to consider evidence of Aquila's allegedly unreasonable gift and gratuity policy, evidence that Praxair says was improperly excluded from the appellate record because the regulatory law judge who acted as presiding officer at the PSC hearing refused to permit it to make an offer of proof, finding the proffered evidence was wholly irrelevant.

 The PSC's authority and the procedures it follows are set out principally in chapter 386. Section 386.410.1 states, "All hearings before the commission or a commissioner shall be governed by rules to be adopted and prescribed by the commission." The PSC accordingly has adopted and prescribed numerous rules governing its operations, including 4 C.S.R. 240–2.130(1), which states that "[i]n any hearing, these [PSC] rules supplement section 536.070, RSMo," governing offers of proof. Section 536.070 is a portion of the Missouri Administrative Procedure Act, or MAPA. To the extent that there are matters not addressed by the PSC statutes and the administrative rules adopted by the PSC pursuant to section 386.410, MAPA "operates to fill gaps not addressed within the PSC statutes." *State ex rel. A & G Commercial Trucking v. Public Serv. Comm'n*, 168 S.W.3d 680, 682–83 (Mo.App.2005).

In regard to offers of proof, however, both 4 C.S.R. 240–2.130(3), adopted by the PSC, and section 536.070.7 of MAPA are

substantively identical. Section 536.070.7 states in relevant part:

In any contested case:

. . . .

(7) Evidence to which an objection is sustained shall, at the request of the party seeking to introduce the same, or at the instance of the agency, nevertheless be heard and preserved in the record, together with any cross-examination with respect thereto and any rebuttal thereof, unless it is wholly irrelevant, repetitious, privileged, or unduly long.[4]

■ The PSC construes the quoted language to mean that if the presiding officer finds that evidence as to which an objection is sustained "is wholly irrelevant, repetitious, privileged or unduly long," then the PSC is authorized to refuse to permit any sort of offer of proof from being made. By its terms, however, the provision is far more limited. It simply says that unless the evidence is found to be wholly irrelevant, repetitious, privileged or unduly long, it must "be heard and preserved in the record, together with any cross-examination with respect thereto and any rebuttal thereof." It does not address whether some more limited form of offer of proof must be permitted even when the presiding officer believes the offered evidence to be repetitious, too long or wholly irrelevant. That is not surprising in light of the dual purpose of offers of proof. One purpose of an offer of proof is to show the trial judge or officer what the rejected evidence would show, with the hope of convincing him or her to reconsider. *State*

*v. Ross*, 292 S.W.3d 521, 526 (Mo.App. 2009) ("The immediate goal of the offer of proof is to educate the trial judge as to the admissibility of the proffered testimony"). In the circumstances set out in the statute, the presiding officer's belief that the evidence is wholly repetitious, unduly long, privileged or irrelevant would make the hope of changing the presiding officer's mind so minimal that it is outweighed by the need to move ahead with the case.

■ There is a second purpose to an offer of proof, however—to preserve for the appellate courts' review a record of what evidence was offered but rejected. *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App.1998) (an offer of proof "preserve[s] the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper").

Both purposes of an offer of proof can be served by a written offer of proof, the propriety of which is not addressed by section 536.070.7. Written offers of proof suffer none of the concerns about oral offers addressed by the statute—even if a matter ultimately is deemed wholly irrelevant, or even if it is presented in a format that the presiding officer considers unduly long or repetitious of other testimony, or if it is deemed privileged, it can be placed in the written record without delaying or disrupting the trial proceeding, so that on review the appellate court can determine for itself whether it agrees with the presiding officer's assessment.

4. Similarly, 4 C.S.R. 240–130(3) states:

The presiding officer shall rule on the admissibility of all evidence. Evidence to which an objection is sustained, at the request of the party seeking to introduce the same or at the instance of the commission, nevertheless may be heard and preserved in the record, together with any cross-exami-nation with respect to the evidence and any rebuttal of the evidence, unless it is wholly irrelevant, repetitious, privileged or unduly long. When objections are made to the admission or exclusion of evidence, the grounds relied upon shall be stated briefly. Formal exceptions to rulings shall be unnecessary and need not be taken.

Indeed, were the statute and comparable PSC regulation interpreted to wholly preclude even written offers of proof of excluded evidence, they would conflict with the Missouri Constitution's separation of powers provisions, which place the power of judicial review in the courts and preclude the other branches from exercising such powers.[5] In keeping with this separation of powers, Mo. Const. art. V, § 18 guarantees to Missouri's citizens the right to judicial review of "all final decisions" of an administrative agency.

 The PSC "is a state agency established by the Missouri General Assembly to regulate public utilities operating within the state." *State ex rel. Atmos Energy Corp.*, 103 S.W.3d at 756. Section 393.190.1 requires regulated public utilities to obtain approval from the PSC for merger transactions.[6] In evaluating whether to approve such transactions, interested parties are allowed to participate in a contested proceeding before the PSC with many of the trappings customarily associated with adjudications conducted by the courts. In this way, the PSC performs a function that is quasi-judicial in nature.

 For the quasi-judicial work of the PSC to comport with basic notions of separation of powers, its decisions must be capable of being tested by (and receiving

the imprimatur of) the judicial branch of this state. This can be accomplished only by way of meaningful and unobstructed judicial review as provided in the Missouri Constitution. As this Court has noted:

> The quintessential power of the judiciary is the power to make *final* determinations of questions of law. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803); *Howlett v. Social Security Comm'n* [347 Mo. 784], 149 S.W.2d 806, 810 (Mo. banc 1941); *Lederer v. State Dept. of Social Servs.,* 825 S.W.2d 858, 863 (Mo.App.1992). This *power* is a non-delegable power resting exclusively with the judiciary. The legislature "has no authority to create any other tribunal and invest it with judiciary power." *State ex rel. Haughey v. Ryan,* 182 Mo. 349, 81 S.W. 435, 436 (1904). Thus, while the legislature may allow for judicial or quasi-judicial decision-making by legislative or executive (administrative) agencies, it may not preclude judicial review of those decisions. Nor may the legislature alter the principal power of the judiciary to make the *final* review. Short of these two considerations, however, there will not customarily be found a violation of the separation of powers clause.

*Asbury v. Lombardi,* 846 S.W.2d 196, 200 (Mo. banc 1993). In keeping with these

---

5. Mo. Const. art. II, § 1 ("The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted"); Mo Const. art. V, § 1 ("The judicial power of the state shall be vested in a supreme court, a court of appeals consisting of the districts as prescribed by law, and circuit courts").

6. Section 393.190.1 provides, in relevant part:

No gas corporation, electrical corporation, water corporation or sewer corporation shall hereafter sell, assign, lease, transfer, mortgage or otherwise dispose of or encumber the whole or any part of its franchise, works or system, necessary or useful in the performance of its duties to the public, nor by any means, direct or indirect, merge or consolidate such works or system, or franchises, or any part thereof, with any other corporation, person or public utility, without having first secured from the commission an order authorizing it so to do.

principles, the legislature has made the right to judicial review concrete by establishing the procedure by which a party may petition for review of PSC decisions in the circuit courts. § 386.510. From there, a party may seek review by the court of appeals much as it could any other final judgment. § 512.020.

The PSC's expansive reading of the statute would mean that any matter could be kept from the record, and so kept from review, if labeled as privileged, repetitive, unduly long, or "wholly irrelevant." While it is not in question here that the presiding officer excluded the evidence because he believed it to be wholly irrelevant, such a rule could be used to exclude evidence that conflicts with or would call into question the PSC's decision, effectively precluding judicial review. Or, as is claimed to have occurred here, the presiding officer simply could be incorrect in his or her view that a particular piece of evidence was wholly irrelevant, privileged or repetitious. Yet, without an offer of proof in the record, that decision effectively would be unreviewable, and relevant and material evidence might be excluded from consideration by the trial or appellate courts in determining whether an appellant has met its "burden of proof . . . to show that the order or decision of the PSC is unlawful or unreasonable." *AG Processing*, 120 S.W.3d at 734. This would interfere with the courts' duty under section 386.510 to "inquire[ ] into or determine[ ]" the PSC decision's "reasonableness or lawfulness" and with its constitutional duty to review

final agency action under Mo. Const. art. V, § 18.

■ This Court, therefore, interprets section 536.070(7) as it is written—it simply provides an exception to the duty the presiding officer otherwise has to allow evidence as to which objection is sustained to be placed in the record and subject to cross-examination and rebuttal. The Court will not read into the statute additional meaning that would call into question its constitutional validity.[7] The presiding officer is not entitled under this statute or the comparable PSC regulation to prohibit a written offer of proof from being placed in the record.

Here, the PSC refused any offer of proof—written or otherwise—as to Great Plains' and KCPL's gift and gratuities policies. This exceeded the PSC's authority under section 536.070.7 and 4 C.S.R. 240-2.130(3). In the absence of an offer of proof, this Court could not determine whether the PSC's refusal to admit evidence of the gift and gratuities policies "substantially impacted the weight of the evidence evaluated to approve the merger." *State ex rel. AG Processing*, 120 S.W.3d at 736. This would render the decision unreasonable and subject to reversal to permit the taking of the excluded evidence. Rather than require this procedural delay, this Court directed appellants to file the written offer of proof it would have made and directed respondents to file any response they would have made. *See* Rule 81.12(f) (permitting court to direct

---

**7.** Because the legislature is presumed to enact laws that comport with constitutional standards, this Court is reluctant to interpret statutes in a manner that would render them unconstitutional or raise serious constitutional difficulties. *Cascio v. Beam*, 594 S.W.2d 942, 946 (Mo. banc 1980) ("[A] court should avoid a construction which would bring a statute into conflict with constitutional limitations"); *Pub. Citizen v. U.S. Dept. of Justice,*

491 U.S. 440, 466, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) ("It has long been an axiom of statutory interpretation that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature]") (quotation and internal citation omitted).

supplementation of record with original documents and exhibits).

In the offer, Praxair attaches excerpts from a number of depositions of Great Plains and KCPL employees. One excerpt quotes Great Plains' and KCPL's gift and gratuities policy as providing that:

> The occasional giving and receiving of modest gifts, meals, services or entertainment is an accepted practice for promoting good will and building and maintaining business relationships. However, they should be infrequent, reasonable, customary, legal and or modest value. It is inappropriate to accept meals, refreshments or entertainment on a regular basis or without returning the hospitality at business-related functions. Invitations to functions that involve travel or overnight stays and are in the best interest of the company will either be paid for by the company or be approved in advance by the president of the applicable company.

Praxair offered testimony from certain Great Plains and KCPL employees stating that they interpreted this policy to permit them to accept gifts such as tickets to sporting events or meals from time to time from entities with which Great Plains and KCPL did business, such as law firms or insurance companies, so long as over time they then would reciprocate by, for example, providing a meal to individuals from these law firms or insurance companies. There is no evidence that Great Plains' employees sought these gifts or that they sought or obtained large or unreciprocated gifts.

Praxair also attached deposition excerpts from Aquila personnel suggesting that Aquila's gift and gratuities policy was more restrictive and prohibited employees from accepting more than nominal gifts such as coffee mugs and pens. Praxair argues that Great Plains' gift policy is subject to abuse and could impose undue costs on taxpayers as its employees felt obligated to reciprocate with gifts of their own, for which they received reimbursement, and that the PSC should reject the merger rather than risk such a gift and gratuity policy being adopted by Aquila.

In response, Great Plains counters that the gift and gratuities practices could not have entered into the "detrimental to the public" analysis because the PSC's " 'authority to regulate does not include the right to dictate the manner in which the company shall conduct its business.' " *State ex rel. Kansas City Transit, Inc. v. Public Serv. Comm'n*, 406 S.W.2d 5, 11 (Mo. banc 1966), *quoting, State ex rel. City of St. Joseph v. Public Serv. Comm'n*, 325 Mo. 209, 30 S.W.2d 8, 14 (1930).

While the PSC may not have the authority to regulate gift policies, it does have the authority to regulate mergers and to disapprove them if they are detrimental to the public. This Court agrees with Praxair that the presiding officer erred in holding that this evidence was wholly irrelevant to the issue of public detriment. While the material in Praxair's offer does may not move the dial very much, it presents a relevant consideration. *State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002) ("logical relevance has a very low threshold"). It is entirely possible that a particular set of gift and gratuity practices could be relevant to the "detrimental to the public" standard were it to permit unethical conduct. Reckless gift giving also conceivably could increase a public utility's costs, resulting in a higher rate being passed through to the ratepayers. Taking such practices into consideration while evaluating a merger does not rise to the level of dictating the way in which a company should conduct its business.

That said, Praxair falls far short of showing that disregarding the evidence of the gift and gratuities policy was unethical or could have substantially impacted the PSC's weighing of the evidence regarding the Aquila merger. The PSC reached its decision approving the merger after receiving volumes of competent evidence on a variety of subjects including Great Plains' and KCPL's creditworthiness, the ability of Great Plains and KCPL to complete certain power plant construction projects and the merger at the same time, and the ability of Great Plains, KCPL and Aquila to achieve merger synergies.

The gift and gratuities policy evidence, in contrast, shows merely that Great Plains and KCPL approved the giving and receipt of modest gifts and entertainment to promote goodwill so long as the gifts were infrequent, customary and of modest value. Whether this was a good policy or whether it could be improved, and whether it was applied as intended, might well be subject to serious debate, but there is no evidence that the policy was used to conceal bribes or corruption, that it influenced decisions or that it produced costs sufficient to affect the setting of rates. The excluded evidence does not constitute substantial evidence, considered alone or in combination with the other evidence adduced below, that the merger would be detrimental to the public. As such, its exclusion did not substantially impact the weight of the evidence evaluated to approve the merger. *State ex rel. AG Processing*, 120 S.W.3d at 736.

## IV. THERE IS NO SHOWING THAT THE PSC WAS BIASED DUE TO THE PRE-FILING MEETINGS

Public Counsel separately appealed the PSC's order. He alleges that the PSC erred in overruling his motion to dismiss the application for merger on the basis that two of the three commissioners who decided the merger were involved in pre-filing meetings held between some of the sitting commissioners and Great Plains executives. Public Counsel raised this issue on a motion to dismiss. The motion does not argue that the meetings resulted in actual bias on the part of these commissioners but rather that they created such a strong appearance of impropriety that the commissioners involved in those meetings were required to recuse themselves, with the result that the PSC could not hear the merger issue.

The PSC defends this practice, suggesting that it is commonplace for its commissioners to meet with executives of the utilities it regulates and to discuss upcoming cases in general terms, although it makes clear that in none of these cases are improper promises sought or made. Therefore, it suggests, its commissioners' conduct is proper under section 386.210, which provides in relevant part:

1. The commission may confer in person, or by correspondence, by attending conventions, or in any other way, with the members of the public, any public utility or similar commission of this and other states and the United States of America, or any official, agency or instrumentality thereof, on any matter relating to the performance of its duties. 2. Such communications may address any issue that at the time of such communication is not the subject of a case that has been filed with the commission.

. . . .

4. Nothing in this section or any other provision of law shall be construed as imposing any limitation on the free exchange of ideas, views, and information between any person and the commission or any commissioner, provided that such communications relate to matters of

general regulatory policy and do not address the merits of the specific facts, evidence, claims, or positions presented or taken in a pending case unless such communications comply with the provisions of subsection 3 of this section.

The Court notes that, first, subsections 1 and 2 of section 386.210 do not authorize the commission to meet with public utilities; they authorize it to meet with public utility and other similar *commissions.* Such contact is permitted "on any matter relating to the performance of its duties" and "may address any issue that at the time of such communication is not the subject of a case that has been filed with the commission." *Id.*

Here, however, the commission members meetings were with executives of utilities, not a utility commission. The cited section did not authorize such contacts. Further, subsection 4 of section 386.210 simply says it does not prohibit meetings where there is no pending case. Neither does it authorize such contacts.[8]

Public Counsel argues that, whatever the PSC rules may say or not say about such contacts, the commissioners' failure to recuse themselves violates the standards of judicial conduct adopted in Missouri's Code of Judicial Conduct, which is set out in canons 1 through 4 of Rule 2. The title of Canon 2 of the code states, "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities," and the body of the rule and commentary state that the appearance of impropriety should lead to recusal.

Public Counsel asserts that the PSC should be governed by these judicial standards when they are acting in a quasi-judicial capacity, such as when adjudicating applications for merger and other cases filed before them.

■ There is some surface appeal to Public Counsel's argument in that the PSC does perform a quasi-judicial function when it acts in an adjudicative capacity. But PSC commissioners are members of the executive branch, not the judicial branch. While they act in a quasi-judicial capacity at times—and at other times act in a regulatory capacity—they are not judges. They are members of an executive branch administrative commission. As such, the judicial canons do not apply to them, for, as expressly stated in the preamble to the code, "The text of the Canons is intended to govern *conduct of judges* and to be binding *upon them.*" *Rule 2.01 Preamble to Missouri Code of Judicial Conduct* (emphasis added). The reason that judges must follow a special and unusually strict code of conduct is discussed in the preamble to the code also:

Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Rule 2 are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in

---

8. Subsequent to the proceedings in this case, the applicable regulation relating to *ex parte* communications was changed significantly to more strictly regulate communications with commissioners. 4 C.S.R. 240–4.020(3)(B) (as amended in 2009, effective July 30, 2010). The new rule provides that a "commissioner, technical advisory staff, or the presiding officer assigned to a proceeding shall not initiate, participate in, or undertake, directly or indirectly, an ex parte communication regarding an anticipated contested case." *Id.* An "anticipated case" is "[a]ny case that a person anticipates, knows, or should know will be filed before the commission within sixty (60) days and that such person anticipates or should anticipate will be or become a contested case." *Id.* 240–4.020(1)(A).

our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.

*Rule 2.01 Preamble to Missouri Code of Judicial Conduct.* Rule 2.03, Canon 1.A. governing ethical conduct by judges, similarly makes clear that it is intended to define the duties of and guide the conduct of members of the "judiciary" and courts, not administrative commissioners. It states:

**Canon 1. A Judge Shall Uphold the Integrity and Independence of the Judiciary**

**A.** *An independent and honorable judiciary is indispensable to justice in our society.* A judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards of conduct so that the integrity and independence *of the judiciary* will be preserved. The provisions of this Rule 2 are to be construed and applied to further that objective.

### COMMENTARY

Deference to the *judgments and rulings of courts* depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depends in turn upon their acting promptly, courteously and without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Rule 2. Public confidence in the impartiality *of the judiciary* is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Rule 2 diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

(emphasis added); *see also Rule 2.03, commentary to Canon 2.B.* ("Maintaining the prestige of judicial office is essential to a system of government *in which the judiciary functions independently of the executive and legislative branches* ") (emphasis added); *Rule 2.01, Preamble* ("Intrinsic to all sections of this Rule 2 are the precepts that judges, individually and collectively, must respect and honor the *judicial* office . . .").

The PSC commissioners are not governed by the canons of judicial conduct and, thus, are not bound by the proscription of Canon 2 that a judge must avoid not just bias but also the appearance of impropriety.

Public Counsel does not cite any authority other than the judicial canons and cases applying them to members of the judicial branch for its argument that the *appearance* of impropriety is itself a sufficient basis on which to base disqualification of an administrative officer acting in a quasi-judicial capacity.

 Cases cited involving persons other than judges in which it is alleged that the tribunal or adjudicator is biased are decided on the basis of due process principles, which require that a tribunal be free of *actual bias* or the *probability of actual bias.* "The procedural due process requirement of fair trials by fair tribunals applies to an administrative agency acting in an adjudicative capacity." *State ex rel. AG Processing, Inc. v. Thompson,* 100 S.W.3d 915, 919 (Mo.App.2003). "A presumption exists that administrative decision-makers act honestly and impartially, and a party challenging the partiality of the decision-maker has the burden to overcome that presumption." *Id.* at 920.

[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to

be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.

*Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). But the mere combination of investigative and adjudicative functions in an agency generally does not create an unconstitutional risk of bias in administrative adjudication. *Id.* at 52, 95 S.Ct. 1456 ("our cases ... offer no support for the bald proposition applied in this case ... that agency members who participate in an investigation are disqualified from adjudicating"). Similarly, "[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not ... disqualify a decisionmaker." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,* 426 U.S. 482, 493, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

Prior Missouri cases have applied these principles to allegations of bias against PSC members, stating:

> The PSC is an administrative body created by statute and has only such powers as are expressly conferred by statute and reasonably incidental thereto. *Union Elec. Co. v. Pub. Serv. Comm'n,* 591 S.W.2d 134, 137 (Mo.App. W.D. 1979). The procedural due process re-

quirement of fair trials by fair tribunals applies to an administrative agency acting in an adjudicative capacity. *Fitzgerald v. City of Maryland Heights,* 796 S.W.2d 52, 59 (Mo.App. E.D.1990) (citing *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 723 (1975)). Thus, administrative decision-makers must be impartial. *Id.* Officials occupying quasi-judicial positions are held to the same high standard as apply to judicial officers in that they must be free of any interest in the matter to be considered by them. *Union Elec.,* 591 S.W.2d at 137. A presumption exists that administrative decision-makers act honestly and impartially, and a party challenging the partiality of the decision-maker has the burden to overcome that presumption. *Burgdorf v. Bd. of Police Comm'rs,* 936 S.W.2d 227, 234 (Mo.App. E.D.1996). A judge or administrative decision-maker is without jurisdiction, and a writ of prohibition would lie, if the judge or decision-maker failed to disqualify himself on proper application. *State ex rel. Ladlee v. Aiken,* 46 S.W.3d 676, 678 (Mo.App. S.D.2001); *State ex rel. White v. Shinn,* 903 S.W.2d 194, 196 (Mo.App. W.D.1995).

*Thompson,* 100 S.W.3d at 919–20.[9]

Similarly, *Union Electric Co. v. Public Serv. Comm'n,* 591 S.W.2d 134, 136, 139

---

**9.** Although *Thompson* uses the term "jurisdiction" the more appropriate term would be authority. *See J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 254 (Mo. banc 2009). It is interesting that here, the PSC argues that Public Counsel had to raise the bias issue as a writ because it does not involve the questions whether the PSC's decision is either lawful or reasonable. In *Thompson,* 100 S.W.3d at 919, the PSC took the contrary position, arguing that an appeal would lie if a commissioner were biased and no writ therefore was appropriate.

As Public Counsel notes, however, the overruling of a motion to dismiss based on bias of

a commissioner can be reviewed as part of the appeal of the ultimate decision in the case, for such a decision necessarily is without lawful authority and the lawfulness of an order is determined "by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo." *State ex rel. AG Processing,* 120 S.W.3d at 734. "The decision of the Commission is reasonable where the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious or where the Commission has not abused its discre-

(Mo.App.1979), relied on by Public Counsel, held that under due process principles and the "common law rule that no man may be the judge of his own cause," a sitting commissioner was disqualified from participating in an adjudication because the commissioner had incorporated, served on the board of directors and been president of a company involved in the case. *Union Electric* is an obvious example of bias arising from an administrative decisionmaker having an interest in the outcome of the case.

 Here, Public Counsel offered no evidence to show any form of actual bias or personal stake in the merger on the part of any commissioner. He made no showing of commitment made by the commissioners based on the pre-filing meetings, or that the commissioners were inappropriately exposed to facts that were not later made of record, or that the information they obtained was more than general background information about adjudicative facts associated with the Aquila merger of the kind that *Withrow* and *Hortonville Joint Sch. Dist. No. 1* indicate are not sufficient to form the basis for a violation of due process. In these circumstances, no showing of actual bias has been made. While the Court agrees that the meetings create an appearance of impropriety, on these facts they are not adequate to overcome the presumption that the PSC acted impartially.

## V. CONCLUSION

For the foregoing reasons, the judgment affirming the PSC decision is affirmed.

All concur.