

# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF THE VERIFIED )
APPLICATION and PETITION OF )
LIBERTY ENERGY (MIDSTATES) CORP. )
d/b/a LIBERTY UTILITIES TO CHANGE )
ITS INFRASTRUCTURE SYSTEM )
REPLACEMENT SURCHARGE, )
                                     )
MISSOURI PUBLIC SERVICE )
COMMISSION, )
                                     )
             Respondents, )
                                     )
v. )      No. SC94470
                                     )
THE OFFICE OF PUBLIC COUNSEL, )
                                     )
             Appellant. )

### APPEAL FROM THE MISSOURI PUBLIC SERVICE COMMISSION

*Opinion issued June 16, 2015*

The Office of the Public Counsel (hereinafter, "Public Counsel") appeals from an order entered by the Missouri Public Service Commission (hereinafter, "the PSC"), granting Liberty Energy (Midstates) Corp. d/b/a Liberty Utilities' (hereinafter, Liberty")[1] request for an increase to its Infrastructure System Replacement Surcharge (hereinafter, "ISRS"). Because the PSC failed to follow the plain language of its

---

[1] In October 2013, the PSC granted Liberty's application for the name change from Liberty Energy (Midstates) Corp. d/b/a Liberty Utilities to Liberty Utilities (Midstates Natural Gas) Corp. d/b/a Liberty Utilities, effective November 1, 2013.

statutory mandates, its order is unlawful. This Court reverses the PSC's order, and the case is remanded.

## Background

Liberty is a natural gas provider. It is a "public utility" and a "gas corporation." Sections 386.020(43) and 386.020(18), RSMo Supp. 2013.[2] The PSC is a Missouri administrative agency charged with the regulation of all public utilities. Sections 386.040 and 386.250(1), RSMo 2000; *see also State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*, 366 S.W.3d 493, 496 (Mo. banc 2012). Public Counsel is appointed by the director of the department of economic development and may represent the public interest in any proceeding before the PSC and in appeals from the PSC's orders. Sections 386.700 and 386.710, RSMo 2000; *Pub. Serv. Comm'n of State v. Missouri Gas Energy*, 388 S.W.3d 221, 224 (Mo. App. W.D. 2012).

In 2012, the PSC authorized Liberty's purchase of substantially all of the assets that Atmos Energy Corporation (hereinafter, "Atmos") used to provide natural gas and transportation services in Missouri. The PSC issued new certificates of convenience and necessity to Liberty for the service areas Atmos previously served. Further, the PSC approved Liberty's adoption of Atmos' ISRS tariff.[3]

Gas corporations are permitted to recover certain infrastructure system replacement costs outside of a formal rate case though a surcharge on their customers'

---

[2] All further statutory references herein are to RSMo Supp. 2013, unless otherwise indicated.
[3] Like its predecessor Atmos, Liberty has a specific ISRS rate for each of its three districts.

bills. When a petition to modify an ISRS is filed, the PSC staff must conduct an examination of the proposed ISRS. Section 393.1015.2, RSMo Supp. 2003. The examination may scrutinize the petitioning gas corporation's information to confirm the costs are in accordance with the ISRS code provisions and confirm the proposed charges are calculated properly. A report of the examination may be submitted to the PSC no later than sixty days after the petition was filed. Section 393.1015.2(2).

In July 2013, Liberty filed a petition with the PSC seeking an adjustment of its ISRS rate schedule. Liberty sought the adjustment to recover costs incurred in connection with ISRS-eligible infrastructure system replacements made from June 1, 2012, through May 31, 2013. After Liberty filed its petition for an adjustment of its ISRS rate schedule, the PSC staff conducted an investigation.

During the examination of Liberty's petition, the PSC staff inspected thirty-six of the two hundred seventy-five projects for which Liberty sought recovery. The projects investigated compromised approximately fifty-eight percent of the costs for which Liberty sought recovery.[4] The PSC staff also examined Liberty's project sub-ledger, which indicated, *inter alia*, whether a project was performed for the integrity of the overall system or was for growth.

The PSC staff submitted its report to the PSC on September 3, 2013. The report noted that Liberty included some growth projects in its application, which are not eligible for recovery in an ISRS. The PSC staff removed those projects from its calculations.

---

[4] Due to the time constraints in an ISRS request, the PSC staff only could investigate a limited number of projects.

The PSC staff also identified other errors and omissions in Liberty's data, including: summation errors; errors in accumulated depreciation; deferred income taxes, property taxes depreciation rates, and conversion factors; and formula errors. The report was updated on September 20, 2013, and September 26, 2013, providing amended revenue figures and customer class rates based on additional data from Liberty.

On September 9, 2013, Public Counsel filed a motion, requesting the PSC reject Liberty's ISRS petition or schedule an evidentiary hearing. Public Counsel asserted, *inter alia*, Liberty was seeking to recover expenses in its ISRS application that were not authorized by section 393.1009(5). The PSC held an evidentiary hearing on September 26, 2013.

At the evidentiary hearing, Liberty's president testified that the requested ISRS rate increase included costs to cover damage to Liberty's facilities caused by a contractor or another third party. Public Counsel argued that Liberty should not recover expenses for its infrastructure that was replaced because it was damaged accidentally or negligently by a third party. Public Counsel maintained that Liberty's replacement of the pipe that was damaged accidently during excavation did not satisfy the section 393.1009(5)(a) requirement that the replacement was for "existing facilities that have worn out or are in a deteriorated condition."

The PSC approved the ISRS increase for Liberty, concluding that "damaged" infrastructure is synonymous with "deteriorated." The PSC found replacing the pipes that were damaged by a third party qualified as a "gas utility project" pursuant to section 393.1009(5)(a), and the projects were "extending the useful life or enhancing the integrity

4

of the pipeline system components" pursuant to section 393.1009(5)(b). Accordingly, Liberty filed a new ISRS tariffs in compliance with the PSC's order, and the PSC approved the tariffs.

Public Counsel filed an application for rehearing, which the PSC denied. Public Counsel appealed, and the court of appeals affirmed. This Court granted transfer pursuant to Mo. Const. art. V, sec. 10, after opinion by the court of appeals.

## Discussion

*Standard of Review*

"This Court reviews the decision of the PSC rather than that of the circuit court." *State ex rel. Praxair, Inc. v. Missouri Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011). Appellate review of a PSC order is two-pronged: first, to determine whether the PSC's order is lawful; and second, to determine whether the PSC's order is reasonable. *MoGas Pipeline, LLC*, 366 S.W.3d at 495-96; *see also* section 386.510. The appellant bears the burden of proof to demonstrate that the PSC's order is unlawful or unreasonable. *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n of State*, 120 S.W.3d 732, 734 (Mo. banc 2003); section 386.430, RSMo 2000. The lawfulness of the PSC's order is determined "by whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo*." *Office of Public Counsel v. Missouri Pub. Serv. Comm'n*, 409 S.W.3d 371, 375 (Mo. banc 2013) (quoting *AG Processing, Inc.*, 120 S.W.3d at 734). This Court need not reach the issue of the reasonableness of the PSC's order if it finds the order unlawful. *MoGas Pipeline, LLC*, 366 S.W.3d at 496. The PSC's order is determined to be reasonable when "the order is supported by substantial,

competent evidence on the whole record; the decision is not arbitrary or capricious[;] or where the [PSC] has not abused its discretion." *Id.* (quoting *Praxair, Inc.*, 344 S.W.3d at 184).

*Lawfulness of the PSC's order*

Public Counsel raises one point on appeal, claiming the PSC erred in approving Liberty's ISRS surcharge because the PSC included expenses that are not authorized by statute. Public Counsel argues that Liberty's replacement of its infrastructure that was damaged by a third party does not meet the statutory requirement of "worn out" or in a "deteriorated condition." Public Counsel asserts that the PSC's order authorizing Liberty to recover costs incurred in replacing infrastructure, regardless of whether the replacement was due to damage caused by human conduct, is contrary to the plain language and the legislative intent of the ISRS statutes. Accordingly, Public Counsel contends, by including these costs in its ISRS application, Liberty's request exceeded the scope of the statute.

A gas company is authorized to petition the PSC to establish or change an ISRS to "allow for the adjustment of the gas corporation's rates and charges to provide for the recovery of costs for eligible infrastructure replacements." Section 393.1012.1. Eligible infrastructure replacements are defined as gas utility plant projects that "[d]o not increase revenues by directly connecting the infrastructure replacement to new customers;" "[a]re in service and used and useful;" "[w]ere not included in the gas corporation's rate base in its most recent general rate case;" and "[r]eplace or extend the useful life of an existing infrastructure …." Section 393.1009(3). A "gas utility plant project" is further limited to

6

include only "[m]ains, valves, service lines, regulator stations, vaults, and other pipeline system components installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or are in deteriorated condition …." Section 393.1009(5)(a).

At issue in this case is whether the damage replacement caused by human conduct is encompassed by the plain language of section 393.1009(5)(a). To determine whether this type of damage replacement is contrary to the plain language of the statute, this Court must engage in statutory interpretation. The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language. *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). This Court must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language. *Wehrenberg, Inc. v. Dir. of Revenue*, 352 S.W.3d 366, 367 (Mo. banc 2011). "Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014) (quoting *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999)).

To determine whether damage caused by human conduct is included in a gas utility plant project, this Court must determine if the "existing facilities" were "worn out or … in deteriorated condition." Section 393.1009(5)(a). "Deteriorate," as used in section 393.1009, is not defined by statute. Accordingly, the meaning is to be defined by the plain and ordinary meaning as derived from the dictionary. *See Balloons Over the*

7

*Rainbow*, 427 S.W.3d at 825. The definition of "deteriorate" is "to make inferior in quality or value," "to grow worse," and "become impaired in quality, state, or condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 616 (1993).

The PSC claims that it could take an expansive view of the definition of "deteriorate" because there is more than one dictionary definition. While one definition of "deteriorate" could be construed to mean a condition that diminishes over time, PSC avers that another definition could mean the condition was made inferior because it was "impaired in quality, state, or value." By only accepting a definition of "impaired in quality, state, or value," the PSC asserts that because the pipes were damaged by a third party, they were made inferior or became impaired in quality, state, or value. Hence, the PSC concludes that it followed the plain language of the statute.

However, the PSC's argument selects one of the multiple definitions of "deteriorate" and expands the meaning of that definition to reach its desired conclusion. The PSC ignores the clear language provided by the dictionary. In the dictionary definition of "deteriorate" as "impaired in quality, state, or value," the definition further clarifies its meaning by adding the synonymous cross-reference of "degenerate" and an illustration of usage that "<idle houses ~>." WEBSTER'S THIRD at 616. Clearly, this definition indicates that deterioration is a gradual process that happens over a period of time rather than an immediate event. Had the legislature intended to include the replacement of gas utility plant projects which were damaged by a third party's negligence, it could have inserted different language into the statute to effectuate that intent.

8

Accordingly, the PSC's interpretation of the statute is incorrect because it would allow any damage to be eligible for an ISRS surcharge rather than the statutorily limited gas utility plant project as delineated by section 393.1009(5)(a). The PSC's interpretation conflicts with the clear legislative intent as demonstrated by the plain language of the statute. The PSC erred in relying upon its presumption that any change to a gas utility plant project qualifies for an ISRS surcharge. Only infrastructure which is in a worn out or deteriorated condition, as stated herein, is eligible for an ISRS surcharge. Hence, the PSC's order is not lawful because it is contrary to the plain language of the statute, which limits projects that qualify for an ISRS surcharge.

## Conclusion

The PSC's reliance upon the incomplete definition of "deteriorate" resulted in an order that was unlawful. Accordingly, the PSC's order is reversed, and the case is remanded.

_____
GEORGE W. DRAPER III, JUDGE

All concur.

9