

# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| THE FRED KEMP COMPANY, LLC, | ) | ED108418 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| v. | ) | 19SL-CC00558 |
| | ) | |
| KITRELL BRASELMAN, IN HIS OFFICIAL | ) | Honorable Robert M. Heggie |
| CAPACITY AS THE DIRECTOR OF PUBLIC | ) | |
| WORKS, CITY OF BLACK JACK, | ) | Filed: February 9, 2021 |
| DEPARTMENT OF PUBLIC WORKS, CITY | ) | |
| OF BLACK JACK, AND CITY OF BLACK | ) | |
| JACK, | ) | |
| | ) | |
| Appellants. | ) | |

The City of Black Jack (City) appeals from a judgment of the circuit court in favor of The

Fred Kemp Company, LLC (Kemp) regarding a public nuisance. The circuit court found Kemp

was not the owner or person in control of the property in question and reversed a hearing

officer's decision holding Kemp responsible for the nuisance. We affirm the judgment of the

circuit court.

## BACKGROUND

Kemp developed the Jamestowne Subdivision in the City of Black Jack, Missouri. On

September 8, 1988, Kemp executed a document titled "Trust Agreement and Indenture of

Restrictions of Jamestowne Subdivision(s)" (Subdivision Indenture). The Subdivision Indenture

sets forth Kemp's plan to develop the land described in the agreement, including the street

abutting 13017 Kinsley Heights Drive, where this public nuisance dispute arose nearly 30 years later. Pursuant to Article III, Section 3.01 of the Subdivision Indenture, the Trustees have the duty "[t]o construct, reconstruct, maintain and repair the streets, gutters, and curbing, or any of them, in and upon the aforesaid roads . . ."

On August 6, 2002, the City approved the final Jamestowne Subdivision plat, which unequivocally states, ". . . Kinsley Heights Drive, 50 feet wide, together with all cul-de-sacs and roundings located at the street intersections, which for better identification are shown hachured on this plat, are hereby dedicated to the City of Black Jack, Missouri for public use forever."[1] On September 12, 2002, Kemp deposited $138,056 into escrow with the City for the construction and maintenance of the Jamestowne Subdivision as required by Section 650 of the City's Subdivision Code. Kemp subsequently began construction and development of the Jamestowne Subdivision. On February 20, 2003, the City released $98,253.20 of the escrow funds, and informed Kemp it was using $38,151 of the remaining escrow monies to pay for incomplete street improvements. Accordingly, $1,651.80 remained of Kemp deposited funds. The record does not indicate the exact date the remaining $1,651.80 was released to Kemp, but it appears the funds were indeed disbursed at some point.

In 2005, Kemp conveyed the property located at 13017 Kinsley Heights Drive to Vernon D. Carter, Jr. Kemp completed construction and development of the Jamestowne Subdivision in 2008. In late 2008, after completing construction of Kinsley Heights Drive, Kemp sent a letter to

---

[1] To begin construction of a new subdivision, the subdivider must follow the City's subdivision procedures: (1) the subdivider must submit a preliminary plan and receive the City's approval; (2) the subdivider must submit a site plan for the City's approval; (3) the subdivider must submit construction plans and receive the City's approval; (4) the subdivider must submit a final subdivision plat, which must be recommended by the City's Planning and Zoning Commission, and approved by the Black Jack City Council. Section 700(e) of the Black Jack City Code of Ordinances requires a copy of the trust indenture and warranty deed for common land conveyance be included with a final subdivision plat. Upon Kemp's compliance with these procedures, he was granted approval to proceed with development.

the City asking how to "turn over or release a road" in the Jamestowne Subdivision even though in 2002 the City had previously approved the final plat specifically dedicating the street for public use.  The City's Director of Public Works, Vijay Bhasin, (Director) replied expressing his concern about water along Kinsley Heights Drive.  Kemp hired Brucker Engineering, Inc. to investigate the issue but Brucker was unable to determine the exact source of the water.  Neither Kemp nor the City took any further action following the inconclusive 2009 Brucker report.  On March 11, 2009, Kemp conveyed the last piece of property abutting Kinsley Heights Drive.

On June 23, 2017, more than eight years after Kemp's final conveyance of property within the entire subdivision and twelve years after Carter purchased 13017 Kinsley Heights Drive, the City's Mayor, Norman McCourt, (Mayor) sent Kemp a letter stating that the Director had declared the portion of the street in front of 13017 Kinsley Heights Drive affected by water seepage issues to be a public nuisance.  The Mayor's letter demanded Kemp abate the public nuisance by "correcting the water seepage issues and repairing and/or replacing" the affected portions of the street pursuant to Section 13–1 of the City Code.[2]

In response to the Mayor's letter, Kemp retained SCI Engineering, Inc. to determine the source of the water seepage on Kinsley Heights Drive.  SCI Engineering investigated but could

---

[2] Section 13–1(b) of the City Code provides:
> (b) When the director of public works, or his duly authorized agent, ascertains that public nuisance as described above exists, the director of public works, or his duly authorized agent, may serve written notice to the owner or other person in control of such property, which such notice shall state at a minimum:
>> (1) That a public nuisance exists;
>> (2) A description of the condition which constitutes the public nuisance;
>> (3) That the recipient of the notice is ordered to abate the public nuisance within seven (7) days after the notice is served;
>> (4) That the owner may file a written request for a hearing before the director of public works on the question of whether a public nuisance exists upon such property; and
>> (5) That if the public nuisance is not abated within said seven (7) day period, the director of public works, or his duly authorized agent, may have the public nuisance abated and the costs of the same shall be assessed against such property and may be included in a special tax bill or added to the annual real estate tax bill for the property and collected in the same manner and procedure for collecting real estate taxes.

not conclusively determine the source of the water. In fact, there is no evidence in the record before us regarding the exact source of the water seepage, much less any determination as to who or what caused it.

Kemp requested a hearing before the City's Department of Public Works (Department) and the Director appointed the administrative hearing officer. A hearing was held on October 26, 2018, pursuant to Section 13–1(b)(4) of the City Code, which states, "the owner may file a written request for a hearing before the director of public works on the question of whether a public nuisance exists upon such property[.]" The parties stipulated to many of the relevant facts. At the hearing, the City presented the live testimony of the Director and the Mayor and Kemp presented the affidavit of its President, William Kemp.

On January 9, 2019, the hearing officer issued Findings of Fact, Conclusions of Law and Order. The hearing officer adopted the facts stipulated by the parties and found four additional "facts," outside the parties' stipulation. The first two additional "facts" merely set forth the applicable portions of Sections 13–1(a) and 13–1(b) of the City Code.[3] The third fact states:

> 18. The water seepage on and onto the surface area of the street and curbing at or near the driveway located at 13017 Kinsley Heights Drive accumulates on an ongoing basis causing the concrete to crumble and subside; leaving a brackish mold on the surface and creating icy/slippery conditions in winter along the gutter line and roadway.

The fourth and final additional fact states, "[t]he condition described in Paragraph 18 existed at the time [Kemp] sought to dedicate the street in question to the City and continues to the present time." The hearing officer offered three conclusions:

> 1. The effect of the surface water that regularly accumulates on the roadway and curbing in front of 13017 Kinsley Heights Drive is in violation of the Black Jack Code of Ordinances §13.1(a) and is a public nuisance.

---

[3] The parties do not argue whether the hearing officer erred in mischaracterizing Section 13–1(a) of the City Code by omitting "placed or thrown" from its summarized definition in paragraph 16 of a public nuisance. Thus, we do not address it.

2. [Kemp] has and has had control over and responsibility for the roadway and curbing on Kinsley Heights Drive.
3. It is [Kemp's] responsibility to abate and eliminate the condition or conditions creating this public nuisance.

The hearing officer ordered Kemp to abate and eliminate the public nuisance at 13017 Kinsley Heights Drive by repairing or replacing any damaged portion of the roadway within a time period to be set by the City's Department of Public Works.

Kemp petitioned the St. Louis County Circuit Court to review the hearing officer's decision. The circuit court heard oral arguments by the City and Kemp. The circuit court upheld the hearing officer's finding that a public nuisance exists at 13017 Kinsley Heights Drive, but reversed the hearing officer's finding that Kemp was in control and therefore responsible for the public nuisance on Kinsley Heights Drive.

This appeal follows.

*Standard of Review*

Article V, Section 18 of the Missouri Constitution permits judicial review of administrative actions to determine whether the agency's actions are authorized by law and, where hearings are required by law, whether the agency's actions are supported by competent and substantial evidence upon the whole record. Mo. Const. Art. V, § 18; *Lagud v. Kan. City Bd. of Police Comm'rs*, 136 S.W.3d 786, 790-91 (Mo. banc 2004). The Missouri Supreme Court has held that Section 536.140.2, RSMo.[4] is consistent with the constitutional standard in Article V, Section 18. *Lagud*, 136 S.W.3d at 791. Under Section 536.140.2, appellate courts may review an administrative action to determine whether it is:

(1) in violation of constitutional provisions;
(2) in excess of the statutory authority or jurisdiction of the agency;
(3) unsupported by competent and substantial evidence upon the whole record;
(4) unauthorized by law for any reason;

---

[4] All statutory references are to RSMo (2016), unless otherwise indicated.

5

(5) made upon unlawful procedure or without a fair trial;
(6) arbitrary, capricious or unreasonable;
(7) an abuse of discretion.

Section 536.140.2; *Lagud*, 136 S.W.3d at 791. When a circuit court reverses a decision of an administrative agency and the agency appeals that decision, we review the decision of the agency rather than that of the circuit court. Rule 84.05(e);[5] *Pulliam v. Dep't of Soc. Servs.*, 96 S.W.3d 904, 906 (Mo. App. W.D. 2003).

We review questions of law de novo. *State Bd. of Registration for Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003). We review an agency decision de novo when the agency decision involves only the agency's application of the law to the facts. *See* Section 536.140.3, RSMo. However, we do not substitute our judgment on the evidence for the agency's, and we defer to the agency's determinations on the weight of the evidence and credibility of the witnesses. *M.A.H. v. Missouri Dept. of Soc. Servs.*, 447 S.W.3d 694, 697 (Mo. App. E.D. 2014).

**DISCUSSION**

Kemp argues three points on appeal, each challenging the hearing officer's January 9, 2019 written decision. Points I and III assert the Department exceeded its jurisdiction by determining who was in control of the property on which there was a nuisance. Point II argues the Department's finding that Kemp was in control of Kinsley Heights Drive is not supported by competent and substantial evidence and is therefore arbitrary, capricious, or unreasonable.

**Point I**

In Point I, Kemp argues the hearing officer exceeded its jurisdiction by finding Kemp in control of the roadway and curbing abutting 13017 Kinsley Heights Drive. While Kemp framed

---

[5] All rule references are to Missouri Supreme Court Rules, unless otherwise indicated.

6

the issue in terms of the hearing officer's jurisdiction, we readily discern a challenge to the hearing officer's authority to determine who was in control of the property.[6] The City presented no evidence of ownership and consequently the hearing officer made no findings regarding ownership of the property in question. Instead, the judgment arbitrarily concluded that Kemp "has and has had control over and responsibility for the roadway and curbing on Kinsley Heights Drive," even though the City failed to present any evidence related to the undefined term of "control." The question presented is whether the hearing officer had the authority to determine responsibility for a nuisance based on "control" over the property.

*Analysis*

The powers of public subdivisions of the State are limited to those expressed or implied by statute, and any doubt is construed against the grant of power. *Burks v. City of Licking*, 980 S.W.2d 109, 111 (Mo. App. S.D. 1998) (citing *State ex rel. St. Louis Housing Authority v. Gaertner*, 695 S.W.2d 460, 462 (Mo. banc 1985)). Municipalities are creatures of statute and only have the powers granted to them by the legislature. *Id.* (citing *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281, 288 (Mo. banc 1977)). Courts follow a strict rule of construction when determining the powers of municipalities. *Id.* If the intent of the legislature is clear and unambiguous from reading the language of the statute in its plain and ordinary meaning, we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. *See Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011).

Cities are granted the power to suppress nuisances by Section 71.780, which provides:

---

[6] We note that our Supreme Court has applied the holding in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), to distinguish challenges to an administrative body's "jurisdiction" from its "authority." *See State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 192 n.9 (Mo. banc 2011) ("Although [a prior case] uses the term 'jurisdiction' the more appropriate term would be authority."). In any event, at oral argument before this Court, Kemp made clear it was addressing the hearing officer's authority under Section 13–1 of the City Code.

7

> The legislative or governing bodies of cities organized under the general statutes or special charters shall have, and they are hereby granted, the power to suppress all nuisances which are, or may be, injurious to the health and welfare of the inhabitants of said cities, or prejudicial to the morals thereof, within the boundaries of said cities and within one-half mile of the boundaries thereof. Such nuisances may be suppressed by the ordinances of said cities, or by such act or order as the charters of said cities authorize them to adopt. If the nuisance is suppressed within the city limits, *the expense for abating the same may be assessed against the owner or occupant of the property, and against the property on which said nuisance is committed*, and a special tax bill may be issued against said property for said expenses.

Section 71.780 (emphasis added). This language unambiguously grants cities the power to suppress nuisances in a manner governed by city ordinance. However, the statute limits who cities may hold responsible for the expense of abating the nuisance to: (1) the owner of the property, (2) the occupant of the property, and (3) the property itself, through a special tax bill.

In contrast, Section 13-1(b) of the City Code governing the suppression of public nuisances in the City of Black Jack, expands Section 71.780 by providing that "[w]hen the director of public works, or his duly authorized agent, ascertains that public nuisance as described above exists, the director of public works, or his duly authorized agent, may serve written notice to the owner or *other person in control of such property*[.]" Section 13–1(b) (emphasis added).

Thus, when the Director determines a public nuisance exists, Section 13-1(b) permits the Director to send notice to "the owner or other person in control of such property," but the term "control" is not defined or explained anywhere in Section 13–1 of the City Code. Section 13–1(b)(4) indicates that the owner may request a hearing on the issue of whether a public nuisance exists upon their property.[7] It does permit the owner to contest any other issues, such as whether

---

[7] Interestingly, the explicit language of Section 13–1(b)(4) authorizes only an owner and not the "person in control" of the property to contest the Director's determination that a nuisance exists. Moreover, we question if this was a "contested" hearing pursuant to the governing provisions of the Missouri Administrative Procedure Act, or if the matter was "uncontested" because the City's ordinance failed to afford Kemp with adequate notice of the issues

the recipient of this notice is even the true "owner." Indeed, it appears from the face of this ordinance that the "owner or person in control of such property" is determined merely by whomever the Director decides to send notice.

However, in Section 71.780, the Missouri General Assembly solely authorized cities to hold owners and occupants of property responsible for abating nuisances on their property. We must strictly construe Section 13–1 of the City Code against its implementation of authority exceeding that granted to cities by Section 71.780. *Burks*, 980 S.W.2d at 111. To the extent Section 13–1 of the City Code permits the City to hold persons deemed to merely be in control of property responsible for abating nuisances, it exceeds the statutory authority of Section 71.780.

Here, while the hearing officer properly found the existence of a public nuisance, there was no finding that Kemp was the owner or occupant of 13017 Kinsley Heights Drive. The hearing officer found Kemp "has and has had control over" the roadway and curbing on Kinsley Heights Drive, and concluded Kemp is responsible for abating the nuisance on that property. However, as discussed above, Section 71.780 does not permit the City to hold parties responsible for nuisances unless they are the owner or occupant of the property. Thus, the hearing officer did not have the authority to order Kemp to abate the nuisance because Kemp was neither the owner or occupant of the property. Point I is granted.

We do not address Kemp's remaining Points II and III because Point I is dispositive. Section 13–1 of the City Code exceeds the statutory authority afforded to cities to pass ordinances to suppress nuisances. Accordingly, we need not decide whether competent and

---

decided at the administrative hearing. *See e.g., Winter Bros. Material Co. v. Cnty. of St. Louis*, 518 S.W.3d 245, 253 (Mo. App. E.D. 2017). If the case was uncontested, Kemp would have been entitled to an original, de novo hearing before the local circuit court to determine the issues without any deference to the City's initial determination of responsibility. *Id* at 251-52. However, as both parties seem to assume these proceedings constitute a contested case, we do not reach this issue.

substantial evidence was presented on an issue which was not properly before the hearing officer in the first place.

## CONCLUSION

The judgment of the circuit court is affirmed.

_____
Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.