EDWARD R. ARDINI, JR., JUDGE
*837 The Office of the Public Counsel ("OPC") appeals from an order entered by the Missouri Public Service Commission ("Commission") granting Laclede Gas Company's ("Laclede") requests for increases to the Infrastructure System Replacement Surcharges ("ISRS") for its Laclede Gas and Missouri Gas Energy ("MGE") service territories. We reverse the Commission's order to the extent that it allowed cost recovery through adjustment to the ISRS rate schedules for the replacement of plastic components that were not in a worn out or deteriorated condition, and the case is remanded.
FACTUAL AND PROCEDURAL HISTORY
The Commission is a state administrative agency that regulates public utilities. §§ 386.040; 386.250.[1] The Commission's Staff acts separately and is a party to all cases before the Commission. In re Laclede Gas Co. , 504 S.W.3d 852, 856 (Mo. App. W.D. 2016). The OPC represents the public in all proceedings before the Commission and all appeals of Commission orders. § 386.710. Laclede is a "gas corporation" and "public utility" as defined in section 386.020 and is engaged in the business of distributing and transporting natural gas to customers within its Laclede Gas service territory in eastern Missouri as well as in MGE's service territory in western Missouri. Laclede is subject to the jurisdiction of the Commission as provided in Chapters 386 and 393.
This case arises from Laclede's current programs for replacing cast iron and unprotected steel gas mains and service lines. Beginning in 2011, Laclede abandoned a previous strategy of replacing only impaired gas mains and service lines and implemented a new approach focused on replacing entire neighborhood systems at one time, which in this case also involved moving its main lines to more convenient locations, changing system pressure, and moving or replacing service lines. On September 30, 2016, Laclede filed petitions with the Commission to recover costs associated with the replacement of these neighborhood systems through an increase to existing ISRS surcharges. The Commission Staff proposed particular adjustments, which were accepted by Laclede. Relevant to this appeal, the OPC objected to Laclede's effort to secure cost recovery through ISRS surcharges for costs associated with the replacement of plastic mains and service lines that were not in a worn out or deteriorated condition.
After holding an evidentiary hearing, the Commission issued its Report and Order, which concluded that "the plastic pipe in this case was an integral component of the worn out and deteriorated cast iron and steel pipe" and thus "the cost of replacing it can be recovered" through an increase to Laclede's existing ISRS surcharges. The OPC appeals.
STANDARD OF REVIEW
The Commission's Order will be affirmed if it is lawful and reasonable.
*838 In re Liberty Energy (Midstates) Corp. , 464 S.W.3d 520, 524 (Mo. banc 2015) (citations omitted). The Commission's Order is lawful if it is authorized by statute, and our review of this issue is de novo. Id. (citations omitted). The Commission's Order is reasonable if it "is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious; [and] where the [Commission] has not abused its discretion." Id. (citations omitted). The party appealing bears the burden of proving that the Commission's Order is unlawful or unreasonable. Id. (citations omitted).
DISCUSSION
Although single-issue ratemaking is generally prohibited, section 393.1012.1 authorizes a gas corporation to petition the Commission for an increase to its ISRS surcharge to recover the costs of "certain government-mandated infrastructure replacement projects outside a general ratemaking case." Laclede Gas Co. v. Office of the Pub. Counsel , 523 S.W.3d 27, 30 (Mo. App. W.D. 2017) (citations omitted). "Pursuant to section 393.1009(3), 'eligible infrastructure system replacements' [under section 393.1012.1 include] 'gas utility plant projects' that meet certain specific criteria." Id. (citation omitted). Eligible "gas utility plant projects" costs that may be recovered through an ISRS surcharge include: "(1) those costs associated with replacements; (2) those costs associated with improvements and enhancements that defer replacements; and (3) those costs associated with government-mandated relocations." Id. ; § 393.1009(5).
Significant to this appeal, section 393.1009(5)(a) sets forth the ISRS-eligibility requirements for replacement projects. Under that provision, cost recovery through an ISRS surcharge is available for "[m]ains, valves, service lines, regulator stations, vaults, and other pipeline system components installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or are in deteriorated condition [.]" § 393.1009(5)(a) (emphasis added). The OPC argues that the replacement costs of the plastic mains and service lines are not ISRS-eligible under this section because those components were not worn out or deteriorated and, additionally, their replacement was not done to comply with a government-mandated safety requirement.
In response, Laclede and the Commission's Staff argue that the plastic mains and service lines were previously installed as "patches" to temporarily extend the life of larger neighborhood cast iron and unprotected steel systems, which the Commission found were worn out or deteriorated due to their age.[2] They also assert that the new neighborhood systems are safer. Thus, they argue, costs associated with replacing the entire neighborhood systems should be eligible for recovery under ISRS. The Commission agreed, concluding in its Order that "the plastic pipe in this case was an integral component of the worn out and deteriorated cast iron and steel pipe" and thus "the cost of replacing it can be recovered" through an increase to the ISRS surcharges.
Although we will not substitute our judgment for the Commission's "on issues within the realm of the agency's expertise[,]" an action of the Commission must be authorized by statute and we *839 exercise "independent judgment regarding the Commission's interpretation of a statute [.]" Laclede Gas Co. , 504 S.W.3d at 859 (citations omitted). "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language. This Court must presume every word, sentence[,] or clause in a statute has effect, and the legislature did not insert superfluous language." Liberty Energy , 464 S.W.3d at 524-25 (citations omitted). Section 393.1009(5)(a), supra , clearly sets forth two requirements for component replacements to be eligible for cost recovery under ISRS: (1) the replaced components must be installed to comply with state or federal safety requirements and (2) the existing facilities being replaced must be worn out or in a deteriorated condition.
No party contests that the plastic mains and service lines were not in a worn out or deteriorated condition,[3] which "is a gradual process that happens over a period of time rather than an immediate event." Liberty Energy , 464 S.W.3d at 525. This creates a challenge for Laclede because our Supreme Court has found this requirement to be mandatory and has interpreted it narrowly. See id. (holding that replacement of components damaged by a third party's negligence is not encompassed by the statute). Laclede and the Commission's Staff essentially argue that the specific condition of the replaced plastic components is not dispositive and that ISRS-eligibility should be determined based on the condition of the entire neighborhood system, and directs us to the Commission's findings that the plastic pipes were installed as "patches" and constituted "an integral component of the worn out and deteriorated cast iron and steel pipe[.]"[4] This effort to assign ISRS eligibility to plastic pipes that are not worn out or deteriorated by evaluating an entire neighborhood system as a singular unit finds no support in the plain language of section 393.1009(5)(a).[5]
*840 Additionally, the Commission's order does not identify a single "state or federal safety requirement" that mandated the replacement of the plastic mains and service lines or, for that matter, replacement of the neighborhood systems as a whole. The Commission's reasoning that patched lines are more "vulnerable ... to leaks" and could result in "degradation of safety" is not a relevant consideration under section 393.1009(5)(a), which unambiguously requires that the replacement be done to "comply with state or federal safety requirements." Although Laclede has a cast iron main replacement program pursuant to 4 C.S.R. 240-40.040(15), no state or federal safety requirement has been cited mandating the manner and extent of the replacement strategy employed by Laclede.[6] Replacement programs undertaken by a gas utility that incidentally improve safety, but are not grounded in a government-mandated requirement, fail to trigger cost recovery under ISRS. Cf. Liberty Energy , 464 S.W.3d at 525 (holding that costs for replacing lines damaged by a third party were not eligible for recovery under ISRS). While Laclede's replacement strategy may laudably produce a safer system, the question squarely before us is not whether its chosen approach is prudent but rather whether the replacement of plastic components that were not in a worn out or deteriorated condition are ISRS-eligible. In analyzing that proposition, we cannot ignore the plain language of the statute for "convenience, expediency[,] or necessity" to conclude that the costs are eligible for recovery through the ISRS process. Laclede Gas Co. , 504 S.W.3d at 859 ("Neither convenience, expediency[,] or necessity are proper matters for consideration in the determination of whether or not an act of the commission is authorized by statute." (citation omitted)); see also Liberty Energy , 464 S.W.3d at 525 (stating that the legislative intent is "demonstrated by the plain language of the statute").
Finally, the Commission's comment that "not allowing recovery of the portions of the main replacement projects that incidentally consist of plastic pipe would be a disincentive to the gas utilities to replace deteriorated pipelines containing portions of plastic" carries no weight and reflects a misapprehension of the breadth of ISRS-eligibility. The purpose of an ISRS surcharge is to allow a utility to "timely recover its costs for certain government-mandated infrastructure projects without the time and expense required to prepare and file a general rate case[.]" In re Laclede Gas Co. , 417 S.W.3d 815, 821 (Mo. App. W.D. 2014) (emphasis added). ISRS-eligibility under section 393.1009(5)(a) is dependent on a project being imposed on a gas utility by a government-mandated safety requirement, and it is the existence of that obligation that provides the only motivation or incentive relevant to our analysis.
*841 Our conclusion that recovery of the costs for replacement of plastic components that are not worn out or in a deteriorated condition is not available under ISRS is based solely on our determination that those costs do not satisfy the requirements found in the plain language of section 393.1009(5)(a). Nothing in this opinion should be construed as expressing any view on the Commission's consideration of those costs in the context of a general ratemaking case.
CONCLUSION
We reverse the Commission's Report and Order as it relates to the inclusion of the replacement costs of the plastic components in the ISRS rate schedules, and the case is remanded for further proceedings consistent with this opinion.
All concur.

All statutory citations are to the Revised Statutes of Missouri 2000 as currently supplemented.

Although not stated in the Commission's order, the replacement of certain cast iron and unprotected steel pipes is mandated by 4 C.S.R. 240-40.030(15).

There was testimony that the pipes were not reviewed to determine if they were worn out or deteriorated and that some of the plastic pipes were past their depreciable life. Laclede Gas depreciates plastic mains over seventy years and plastic service lines over forty-four years. MGE uses general rates (rather than distinguishing between plastic, cast iron, unprotected steel, etc.) and depreciates mains over fifty years and service lines over forty years. The plastic pipes in this case dated from as early as the 1970s and as late as 2016.

We question the characterization of the plastic pipes as "patches" given that some have been in place since as early as the 1970s and that Laclede did not adopt its strategy to replace entire neighborhood systems at one time until 2011. Additionally, the plastic main and service line replacements were not merely de minimis but "varied from just a few feet to several hundred feet in length. " (emphasis added). In fact, a sample of work orders provided by Laclede and analyzed by the parties revealed that 53,415 feet of main lines were retired, of which 8,817 feet were plastic (approximately 16 percent), and 53,279 feet of service lines were retired, of which 34,223 feet were plastic (approximately 64 percent).

We recognize that the replacement of worn out or deteriorated components will, at times, necessarily impact and require the replacement of nearby components that are not in a similar condition. Our conclusion here should not be construed to be a bar to ISRS eligibility for such replacement work that is truly incidental and specifically required to complete replacement of the worn out or deteriorated components. However, we do not believe that section 393.1009(5)(a) allows ISRS eligibility to be bootstrapped to components that are not worn out or deteriorated simply because that are interspersed within the same neighborhood system of such components being replaced or because a gas utility is using the need to replace worn out or deteriorated components as an opportunity to redesign a system (i.e. , by changing the depth of the components or system pressure) which necessitates the replacement of additional components.

Laclede testified that it adopted its new neighborhood replacement strategy in response to new requirements regarding system integrity under 4 C.S.R. 240-40.030(17), which requires gas companies to develop a written integrity management plan to identify threats to gas distribution systems. Other than this general assertion, however, Laclede did not testify that the regulation mandated it to replace entire neighborhood systems. In fact, after generally testifying that pipe joints or connections increase vulnerability and create a safety concern, Laclede admitted that their pipe joints were in compliance with all gas safety rules.