

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF THE
APPLICATION OF LACLEDE GAS
COMPANY TO CHANGE ITS
INFRASTRUCTURE SYSTEM
REPLACEMENT SURCHARGE IN ITS
MISSOURI GAS ENERGY SERVICE
TERRITORY; IN THE MATTER OF
THE APPLICATION OF LACLEDE GAS
COMPANY TO CHANGE ITS
INFRASTRUCTURE SYSTEM
REPLACEMENT SURCHARGE IN ITS
LACLEDE GAS SERVICE TERRITORY;
THE OFFICE OF PUBLIC COUNSEL;

WD82199 and WD82299

OPINION FILED:

November 19, 2019

          **Appellant-Respondent,**

**SPIRE MISSOURI, INC.,**

          **Respondent-Appellant,**

**v.**

**MISSOURI PUBLIC SERVICE
COMMISSION,**

          **RESPONDENT.**

## APPEAL FROM THE PUBLIC SERVICE COMMISSION

**Before Division Two:**
**Thomas H. Newton, P.J. Anthony Rex Gabbert, and Thomas N. Chapman, JJ.**

The Office of Public Counsel and Spire Missouri, Inc. appeal from the Report and Order

on Remand entered by the Public Service Commission. In its sole point on appeal, the Office of

Public Counsel argues that the Public Service Commission erred in finding that it did not have

statutory authority to order Spire Missouri, Inc. to issue refunds of ineligible infrastructure system replacement surcharges. In its three points on appeal, Spire Missouri, Inc. argues that the Public Service Commission erred in disallowing $3,110,787 in infrastructure system replacement surcharges. We affirm in part, reverse in part, and remand for further proceedings.

### Parties & Regulatory Background

The Public Service Commission (PSC) is a Missouri agency responsible for regulating the conduct of utility providers. *See* § 386.250.[1] "The Commission employs technical experts [Staff] who are responsible for representing the Commission and the State of Missouri in all Commission investigations, contested cases, and other proceeding unless PSC Staff timely files a notice of its intention not to participate." *Missouri-Am. Water Co.'s Request for Auth. to Implement a Gen. Rate Increase for Water & Sewer Serv. Provided in Missouri Serv. Areas v. Office of Pub. Counsel*, 526 S.W.3d 253, 256 (Mo. App. W.D. 2017). The Office of Public Counsel (OPC) is separate from the PSC and Staff; it is authorized by statute to "represent and protect the interests of the public in any proceeding before or appeal from the public service commission[.]" *See* § 386.710. Spire Missouri, Inc. (Spire) is a "gas corporation" and "public utility" as those terms are statutorily defined. *See* § 386.020(18), (43). Spire provides gas services to two service areas, Spire East and Spire West.[2]

At issue in this case is Spire's collection of certain infrastructure system replacement surcharges (ISRS). In 2003, "[t]he Legislature created ISRS to allow for single-issue ratemaking so that gas corporations could recover the costs associated with certain government-mandated

---

[1] Statutory references are to RSMo 2016 unless otherwise indicated.

[2] Spire East was formerly known as "Laclede Gas Co." and Spire West was formerly known as "Missouri Gas Energy" or "MGE."

2

infrastructure replacement projects outside a general ratemaking case." *Laclede Gas Co. to Change its Infrastructure Sys. Replacement Surcharge in its Laclede Gas Serv. Territory v. Office of the Pub. Counsel*, 523 S.W.3d 27, 30 (Mo. App. W.D. 2017) (citing §§ 393.1009, 393.1012, 393.1015). Under § 393.1012.1,

> a gas corporation providing gas service may file a petition and proposed rate schedules with the commission to establish or change ISRS rate schedules that will allow for the adjustment of the gas corporation's rates and charges to provide for the recovery of costs for eligible infrastructure system replacements…. An ISRS and any future changes thereto shall be calculated and implemented in accordance with the provisions of sections 393.1009 to 393.1015. ISRS revenues shall be subject to a refund based upon a finding and order of the commission to the extent provided in subsections 5 and 8 of section 393.1009.

Section 393.1009(5)(a) allows for ISRS recovery of costs associated with "[g]as utility plant projects," consisting of "[m]ains, valves, service lines, regulator stations, vaults, and other pipeline system components installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or are in deteriorated condition[.]" Thus, the ISRS statutes "provide a method, outside of a formal rate case, for a gas corporation to recover the cost of certain government-mandated infrastructure system replacement projects via a petition to establish or change an ISRS." *In re Laclede Gas Co.*, 417 S.W.3d 815, 818 (Mo. App. W.D. 2014); *see also* § 393.1009, *et seq*.

### Procedural & Factual Background

The case presently before us was the subject of a previous appeal. *See Matter of Application of Laclede Gas Co. to Change Its Infrastructure Sys. Replacement Surcharge in Its Missouri Gas Energy Serv. Territory v. Office of Pub. Counsel*, 539 S.W.3d 835 (Mo. App. W.D.

2017).[3]  There, we summarized the factual background of that appeal (and the present one) as follows:

> This case arises from [Spire's] current programs for replacing cast iron and unprotected steel gas mains and service lines. Beginning in 2011, [Spire] abandoned a previous strategy of replacing only impaired gas mains and service lines and implemented a new approach focused on replacing entire neighborhood systems at one time, which in this case also involved moving its main lines to more convenient locations, changing system pressure, and moving or replacing service lines. On September 30, 2016, [Spire] filed petitions with the Commission to recover costs associated with the replacement of these neighborhood systems through an increase to existing ISRS surcharges. The Commission Staff proposed particular adjustments, which were accepted by [Spire]. Relevant to this appeal, the OPC objected to [Spire's] effort to secure cost recovery through ISRS surcharges for costs associated with the replacement of plastic mains and service lines that were not in a worn out or deteriorated condition.

*Spire I*, 539 S.W.3d at 837.

In *Spire I*, we began by noting that Spire was attempting to recover (through ISRS surcharges) the costs of replacing plastic mains and service lines that were *not* in a worn out or deteriorated condition.  *Id*. at 839.  We held that the costs of replacing plastic components that were not worn out or deteriorated were not eligible for ISRS recovery.  *Id*. at 841.  The Court therefore "reverse[d] the Commission's Report and Order as it relate[d] to the inclusion of the replacement costs of the plastic components in the ISRS rate schedules," and "remanded [the case] for further proceedings consistent with this opinion."  *Id*.  The parties' motions for rehearing and transfer to the Missouri Supreme Court were denied, and our mandate issued on March 7, 2018.  Before conducting any hearings on remand, the PSC approved new general rates for Spire and the previously effective ISRS that formed the basis of the first appeal was reset to zero.  The new rates went into effect on April 19, 2018.

---

[3] To avoid confusion with other cases cited in this opinion involving Laclede Gas Co., we refer to the earlier appeal in this case as *Spire I*.

On remand, the PSC directed the parties to file briefing as to how to proceed in light of this Court's opinion and mandate in *Spire I*. After initial briefing by the parties, the PSC held oral arguments on August 9, 2018. At the hearing, Spire argued that its method of entirely replacing neighborhood systems (including the plastic portions that were not worn out or deteriorated) resulted in a cost savings to ratepayers as compared with a program that would replace *only* steel and cast iron facilities while attempting to reuse the existing plastic components. In other words, because its replacement of ISRS-ineligible plastic components did not generate any added costs, no refund was warranted. Staff argued that Spire had over-collected millions of dollars through its replacement of ISRS-ineligible plastic components and that a refund of those amounts was appropriate under both Missouri statutory law and the PSC's own rules. The OPC similarly argued that Spire should be required to issue a refund (although its calculation of the refund amount differed slightly from Staff's).

On August 15, 2018, the PSC entered an Order providing that additional evidence would be necessary to resolve the issues raised by this Court's first opinion and mandate. It scheduled an evidentiary hearing for August 27 and August 28, 2018. At the hearing, Spire presented expert testimony from its own employees. Spire's witnesses testified that the company's practice of replacing existing plastic pipe (rather than incorporating it into new systems) had the effect of saving its customers money. Specifically, Spire's Vice President of Operations and Services, Craig Hoeferlin, testified that the company analyzed nine replacement projects selected by OPC itself (and another project chosen by Spire) and determined that the company's method of replacing existing plastic facilities resulted in a net savings of $230,000 to ratepayers when compared with a method that attempted to reuse those components. Spire's Director of Health, Safety, and Environment, Mark Lauber, testified "that the retirement of plastic facilities as part of

5

the Company's cast iron and bare steel main replacement programs served to reduce rather than increase the costs incurred for these programs and thus the amounts included in the Company's ISRS filings." He opined that the company's replacement of plastic components (as opposed to an approach that sought to reuse those components) had saved its customers millions of dollars.

The OPC and Staff proffered evidence from their own experts indicating that Spire had improperly charged ratepayers for the cost of removing plastic components that were not deteriorated or worn out and contended that, in accordance with our opinion in the first appeal, the company should be required to issue a refund. Kim Bolin, a Utility Regulatory Auditor for the PSC, testified that after this Court issued its opinion in the first appeal, Spire Missouri provided Staff with all work order authorizations for projects totaling over $25,000 (except for blanket work orders). After analyzing these projects, Staff decided the refund amount owed to Spire's customers using the following methodology: for each project (1) Staff calculated the feet of main and service lines replaced and retired, (2) determined the percentage of retired pipe that consisted of plastic, and (3) multiplied that percentage times the total cost of the project. Using this calculus, PSC Staff concluded that Spire had over-collected $3,110,787 in 2016 and owed its ratepayers a refund in that amount.

Bolin maintained that the percentage-based model was the only method Staff could devise to adhere to this Court's earlier holding that Spire could not legally recover ISRS surcharges attributable to removing plastics that were not worn out or deteriorated. Staff elicited further testimony from David Sommerer, Manager of the PSC's Procurement Analysis Department. Sommerer acknowledged that Staff's percentage-based method was "imperfect," but did not fully accept Spire's position that it had, in the aggregate, saved its customers money by virtue of its practice of bypassing and replacing plastic components instead of incorporating

6

them into the new systems. He testified to further complications occasioned by Spire's systematic replacement program:

> Q. Is it conceivable that the Company's "systematic" replacement approach has ended up replacing main that had already been replaced under its previous "piecemeal" or block by block approach?

> A. Yes. It is possible that the Company has previously requested ISRS recovery of the cost of inserting this relatively new plastic main under the "piecemeal" approach 10 years ago, while re-replacing it in its post-2012 entire cast iron system replacement approach. This is important to know to understand whether the replacement program is actually incorporating many incidental patches or what is being replaced includes much longer segments of previously "replaced" cast iron using plastic inserts.

> …

> [A]lthough I am not an attorney, my understanding of the Court of Appeals' direction is to establish instances where plastic mains and services were not worn out or deteriorated. Upon identifying those situations, the ISRS would then need to be reduced by those replacement costs.

The OPC's experts testified that insofar as Spire's ISRS application sought recovery of costs attributable to removing and replacing ineligible plastic facilities, the entire application was non-compliant with the ISRS statute and thus the entire ISRS amount would need to be refunded. Alternatively, the OPC calculated Spire's ISRS costs attributable to replacing ineligible plastics using the same percentage-based method utilized by Staff, albeit while relying upon far fewer work orders. In its post-hearing brief, the OPC acknowledged that Staff's calculation was based upon more extensive data and conceded that the PSC would be justified in ordering Spire to refund the amount calculated by Staff.

Following the evidentiary hearing and briefing by the parties, the PSC issued its Report and Order on Remand (Remand Order). In its Remand Order, the PSC found that "Staff's witnesses provided credible testimony on the correct methodology for determining the costs of

7

ineligible plastic pipe replacements, and Staff's evidence on this issue was the best evidence presented at the hearing." The PSC observed that Spire had not determined whether any of the pipe it was replacing was worn out or deteriorated and concluded that it was attempting to recover ISRS costs for the replacement of ineligible components. In addition, it found Spire did not provide information necessary "to determine whether any plastic pipe being replaced was incidental to and required to be replaced in conjunction with the replacement of other worn out or deteriorated components." The PSC acknowledged Spire's argument that its neighborhood replacement program *saved* its customers money when compared with a piecemeal approach that sought to reuse existing plastic components, but found that Spire had adduced insufficient evidence to support this contention. Specifically, it referred to Spire's analysis of ten work orders which purported to show a net cost savings produced by its systematic neighborhood replacement program. It ruled that Spire had submitted "far too few work orders" to support its position that analysis of all of the relevant projects would have yielded the same result (no added costs). It therefore accepted Staff's calculation and determined that Spire had collected ineligible ISRS costs in the amount of $3,110,787.

The PSC concluded, however, that it did not have authority to order Spire to issue a refund to its customers because this Court had not specifically instructed it to do so in *Spire I*. It noted that the Court had not issued such a specific directive even though the OPC had requested a refund instruction multiple times in its appellate briefing. It further ruled that the challenged ISRS was no longer in effect (because of an intervening general rate case commenced by Spire) and that ISRS tariffs generally cannot be corrected retroactively.

The OPC filed a timely appeal and Spire also appeals.

## Discussion

Pursuant to § 386.510, we review the PSC's Remand Order solely to determine whether it is lawful and reasonable. "Where ratemaking is at issue, determinations by the Commission are favored by a presumption of validity." *In Matter of Kansas City Power & Light Co.'s Request for Auth. to Implement a Gen. Rate Increase for Elec. Serv. v. Missouri Pub. Serv. Comm'n*, 509 S.W.3d 757, 765 (Mo. App. W.D. 2016).

> "The lawfulness of the [Commission's] order is determined by 'whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo*.' " *In re Verified Application & Petition of Liberty Energy (Midstates) Corp.*, 464 S.W.3d 520, 524 (Mo. banc 2015). If we find the Commission's order is unlawful, we need not reach the issue of the reasonableness of the Commission's order. *Id*. If we find the Commission's order is lawful, then we must determine whether the Commission's order is reasonable. *Id*. "The [Commission's] order is determined to be reasonable when 'the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious[;] or where the [Commission] has not abused its discretion.' " *Id*.

*Laclede Gas Co.*, 523 S.W.3d at 32 (citation omitted).

### OPC Appeal

In its sole point on appeal, the OPC argues that the PSC erred in its determination that it lacked statutory authority to order Spire to issue refunds to its customers.[4] Both Spire and the PSC argue that this issue has been rendered moot because the disputed ISRS has been reset to zero.[5] Because it presents a threshold issue, we begin by addressing whether the present controversy is moot. *State, ex rel. Pub. Counsel v. Pub. Serv. Comm'n of the State of Missouri*,

---

[4] We understand this to be a challenge to the lawfulness of the PSC's Remand Order, which we review de novo.

[5] The PSC also asks us to dismiss OPC's appeal, citing a number of alleged deficiencies in OPC's brief. Even were we to agree that OPC's brief is defective, the Court has "discretion to review non-compliant briefs ex gratia where the argument is readily understandable." *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017). Because we can easily discern OPC's arguments, we deny the PSC's request to dismiss OPC's appeal.

328 S.W.3d 347, 352 (Mo. App. W.D. 2010) (noting that "[a] threshold question in any appellate review of a controversy is the mootness of the controversy."). "A case becomes moot when the matter presented for review seeks a decision 'upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy[.]'" *Id*. (quoting *Precision Invs., L.L.C. v. Cornerstone Propane*, *L.P.*, 220 S.W.3d 301, 304 (Mo. banc 2007)).

Spire and the PSC cite *Matter of Missouri-Am. Water Co.*, 516 S.W.3d 823 (Mo. banc 2017) for the proposition that this case is moot.[6] In that case, a water utility received approval to collect surcharges for certain infrastructure system replacement costs undertaken in St. Louis County. *Missouri-Am. Water*, 516 S.W.3d at 826. The OPC filed an application for rehearing, arguing that the utility could not recover ISRS costs in St. Louis County because the county's population had fallen below one million inhabitants (a benchmark for ISRS eligibility under § 393.1003). *Id*. The PSC denied the OPC's application, and the OPC appealed. *Id*. While the appeal was pending, the utility and "PSC staff reached a stipulation and agreement establishing a new base rate that incorporated the costs of the MAWC projects for all then-existing surcharges, including the surcharge at issue in this case." *Id*. at 826-27.

The Missouri Supreme Court observed that after the ISRS charges were approved, and while their validity was pending appeal, they had been reset to zero and incorporated in the utility's general rate base. *Id*. at 828. It stated that the disputed tariffs had been superseded and noted the general rule that "superseded tariffs cannot be corrected retroactively." *Id*. The

---

[6] While the PSC's Remand Order did not explicitly state that it was precluded from issuing refunds because the case had become moot, it quoted extensively from *Missouri-Am. Water* in support of its conclusion that it could not correct superseded "tariffs retroactively by applying a refund prospectively in future ISRS cases."

Supreme Court then concluded by holding that the OPC's challenge to the validity of the surcharge had become moot because the surcharge was "no longer in effect" and the Court was therefore precluded from granting relief. *Id*. at 830.

*Missouri-Am. Water* is distinguishable from the present case for at least two reasons. First, *Missouri-Am. Water* involved an ISRS surcharge that had been superseded and reset to zero during the pendency of the appeal, and before the Missouri Supreme Court handed down its opinion and mandate. By contrast, our mandate in *Spire I* issued on March 7, 2018, while, according to the PSC's Remand Order, Spire's new general rates went into effect on April 19, 2018. *See* § 393.1015.6(1) ("A gas corporation that has implemented an ISRS pursuant to the provisions of sections 393.1009 to 393.1015 shall file revised rate schedules to reset the ISRS to zero when new base rates and charges become *effective*[.]") (emphasis added). Thus, this case did not involve a retroactive correction of invalid ISRS surcharges; rather, the challenged surcharges were still in effect when our mandate issued.

Secondly, *Missouri-Am. Water* addressed only the "propriety" of an ISRS surcharge that had been incorporated into the utility's rate base following a general rate case. 516 S.W.3d at 825. The Supreme Court held only that it could not adjudicate the *validity* of an ISRS surcharge that no longer existed. *Id*. Once the surcharge had been reset to zero, the OPC's challenge to the surcharge was rendered moot. *Id*. at 828. The OPC presents a distinct issue in this appeal. It is not now challenging the propriety of Spire's attempts at collecting ISRS surcharges for the costs of replacing plastic piping not in a worn out or deteriorated condition. We determined that issue in *Spire I* when we held that those costs are not eligible for ISRS recovery. OPC is instead requesting an order that Spire refund the previously collected ISRS-ineligible surcharges to its customers.

11

Having determined that the OPC's point on appeal presents an issue that is still ripe for review, we turn to the consideration of whether statutory or other authority exists for the PSC to order Spire to issue refunds. We conclude that the PSC is so authorized pursuant to § 386.520.2(1)-(2), which provides as follows:

> ***In the event a final and unappealable judicial decision determines that a commission order or decision unlawfully or unreasonably decided an issue or issues in a manner affecting rates, then the court shall instruct the commission to provide temporary rate adjustments and, if new rates and charges have not been approved by the commission before the judicial decision becomes final and unappealable, prospective rate adjustments***. Such adjustments shall be calculated based on the record evidence in the proceeding under review and the information contained in the reconciliation and billing determinants provided by the commission under subsection 4 of section 386.420 and in accordance with the procedures set forth in subdivisions (2) to (5) of this subsection;
>
> (2) If the effect of the unlawful or unreasonable commission decision issued on or after July 1, 2011, was to increase the public utility's rates and charges in excess of what the public utility would have received had the commission not erred or to decrease the public utility's rates and charges in a lesser amount than would have occurred had the commission not erred, then the commission shall be instructed on remand to approve temporary rate adjustments designed to flow through to the public utility's then-existing customers the excess amounts that were collected by the utility plus interest at the higher of the prime bank lending rate minus two percentage points or zero….

(Emphasis added).[7] The PSC found that this statute did not authorize it to order a refund. It reasoned that although this Court held in the first appeal that Spire was not permitted to collect ISRS costs attributable to the replacement of plastic components that were not worn out or deteriorated, the Court did not "instruct the commission to provide temporary rate adjustments"

---

[7] The PSC contends on appeal that § 386.520 does not support the issuance of a refund because the statute is directory, rather than mandatory. *See Frye v. Levy*, 440 S.W.3d 405, 409 (Mo. banc 2014) ("[T]he distinction between 'mandatory statutes' and 'directory statutes' is whether the legislature intended to make all actions that fail to comply with that obligation void or ineffective."). However, the PSC ruled in its Remand Order that a refund was not authorized because this Court had not included a refund instruction in *Spire I*; it did not refuse to order a refund because § 386.520 is directory (rather than mandatory) with respect to the Court or the PSC. Thus, we do not need to decide whether § 386.520 is "mandatory" or "directory" since that distinction has no bearing on whether *Spire I* contained an instruction to order a refund.

12

or otherwise order a refund. The OPC argues, and we agree, that our opinion in *Spire I* implicitly contained such an instruction.

In the first appeal, we remanded the case for further proceedings consistent with our opinion in *Spire I*. *Gerken v. Missouri Dep't of Soc. Servs., Family Support Div*., 415 S.W.3d 734, 738 (Mo. App. W.D. 2013) ("'It is well settled that the mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate.'") (quoting *Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302, 305 (Mo. banc 1991)). In our opinion, we concluded that "recovery of the costs for replacement of plastic components that are not worn out or in a deteriorated condition is not available under ISRS[.]" *Spire I*, 539 S.W.3d at 831.

Our mandate required the PSC to conduct proceedings consistent with our opinion, which would address its error in allowing interim ISRS surcharges for the replacement of plastic components that are not worn out or in a deteriorated condition. In such circumstances, where it has been determined "that a commission order or decision unlawfully or unreasonably decided an issue or issues in a manner affecting rates" the commission "shall be instructed to provide temporary rate adjustments…" § 386.520.2(1). Disallowing such refund not only ignored what our mandate clearly entailed (to conduct proceedings necessary to correct the error in over-collection of ISRS surcharges) but also ignored what § 386.520.2(1) clearly requires – temporary rate adjustments (refunds) to correct the PSC's error. Additionally, had we concluded that Spire was not legally allowed to collect ISRS costs attributable to ineligible replacements, but that it nevertheless could keep the costs it collected for such ISRS-ineligible replacements, our opinion would have had a negligible impact on the controversy between the parties.[8] *See State ex rel.*

---

[8] In the instant case, the OPC seeks the refund of ISRS costs attributable to Spire's replacement of ineligible plastics in 2016. In a separate appeal, the OPC has raised the very same issue for ISRS costs collected by Spire in 2017.

*Missouri Parks Ass'n v. Missouri Dep't of Nat. Res.*, 316 S.W.3d 375, 384 (Mo. App. W.D. 2010)

("Missouri courts do not issue opinions that have no practical effect and that are only advisory as to future, hypothetical situations.").

"On remand, proceedings in the trial court should be in accordance with both the mandate and the result contemplated in the opinion." *Frost*, 813 S.W.2d at 304. "What is contemplated in an opinion by necessary implication is equivalent to that which is clearly and expressly stated." *Id*. at 305. Our opinion in the first appeal held that Spire cannot collect ISRS costs attributable to ineligible plastic; by necessary implication, this meant that Spire could not retain (and was therefore required to refund) the improperly collected costs.[9]

---

While the 2017 cases were pending before the PSC and before we issued our opinion in *Spire I*, the parties stipulated that our decision in the first appeal would govern both the 2016 and 2017 ISRS cases, where applicable. It is noteworthy that in that stipulation, Spire and Staff agreed "not to challenge OPC's right" "to request that the Commission determine the amount of refund, if any, that shall be made in both the [2016 cases] and the [2017 cases]," in the event that our decision in *Spire I* held that Spire could not use ISRS to recover the costs of replacing plastics that were not worn out or deteriorated.

[9] In support of its contention that no refunds should be ordered, Spire cites § 386.420.4, which states as follows:

> A full and complete record shall be made of all proceedings before the commission or any commissioner on any formal hearing had, and all testimony shall be taken down by a reporter appointed by the commission, and the parties shall be entitled to be heard in person or by attorney.... In any proceeding resulting in the establishment of new rates for a public utility ..., the commission shall cause to be prepared, with the assistance of the parties to such proceeding, and shall approve, after allowing the parties a reasonable opportunity to provide written input, a detailed reconciliation containing the dollar value and rate or charge impact of each contested issue decided by the commission, and the customer class billing determinants used by the commission to calculate the rates and charges approved by the commission in such proceeding. ***Such information shall be sufficient to permit a reviewing court and the commission on remand from a reviewing court to determine how the public utility's rates and charges, including the rates and charges for each customer class, would need to be temporarily and, if applicable, permanently adjusted to provide customers or the public utility with any monetary relief that may be due in accordance with the procedures set forth in section 386.520. In the event there is any dispute over the value of a particular issue or the correctness of a billing determinant, the commission shall also include in the reconciliation a quantification of the dollar value and rate or charge impact associated with the dispute.***

(Emphasis added). While the first appeal was pending, the parties attempted to comply with § 386.420.4 by submitting reconciliations to the PSC setting forth the dollar value of the ineligible plastic replacements. However, the parties did not agree on the value of the ineligible plastic parts. At the initial post-remand oral argument, Spire's counsel conceded: "I don't believe that there is a legal barrier to having additional proceedings if you believe that

14

We find that the PSC has the authority and the duty to order refunds of ISRS over-collections.[10] The portion of the PSC's Remand Order finding that it was not statutorily authorized to issue a refund was unlawful. The OPC's sole point on appeal is granted.

### Spire Appeal

Spire has also filed an appeal. In its second point on appeal, Spire argues that the PSC's Remand Order disallowing ISRS recovery for the costs of replacing plastic facilities in connection with its systematic neighborhood replacement program (approximately $3.1 million) was unsupported by substantial and competent evidence and was therefore arbitrary and unreasonable.[11] Spire cites the testimony of its own experts, who opined generally that there

was appropriate." However, Spire now contends that, because the calculated disallowance was based on evidence adduced at the remand hearing, rather than a reconciliation figure previously approved by the PSC, "this was simply not a case that lent itself to an adjustment as contemplated by §386.520.2(1) and §386.420.4." We reject this argument. While § 386.420.4 provides a mechanism for calculating temporary or permanent rate adjustments in accordance with § 386.520.2(1), it does not prohibit the PSC from conducting further evidentiary proceedings to determine the rate adjustments that may be required to provide customers with monetary relief.

[10] The PSC also argues that § 386.520 does not support the issuance of a refund because such relief is separately provided for under § 393.1015.8, which states, in relevant part:

> In the event the commission disallows, during a subsequent general rate proceeding, recovery of costs associated with eligible infrastructure system replacements previously included in an ISRS, the gas corporation shall offset its ISRS in the future as necessary to recognize and account for any such overcollections.

See also § 393.1015.5(2) (prescribing a reconciliation process where it has been determined that a gas corporation over or under-collected ISRS revenues). The PSC argues that the specific provisions of § 393.1015 "prevail over the general rate adjustment provisions of Section 386.520." Assuming arguendo that § 393.1015 is more specific than § 386.520, the principle that a more specific statute prevails over a less specific one "applies only in situations where there is a 'necessary repugnancy' between the statutes." Greenbriar Hills Country Club v. Dir. of Revenue, 47 S.W.3d 346, 352 (Mo. banc 2001). Discerning no conflict between §§ 386.520 and 393.1015, we find the principle inapposite in this case.

[11] Spire's first point on appeal contends that the PSC's Remand Order was unlawful in that the PSC failed to follow our directive in Spire I to calculate the costs incurred to replace ineligible plastic. The gist of Spire's argument is that the percentage method adopted by the PSC did not accurately capture the costs of replacing ineligible plastic and that the PSC therefore failed to calculate those costs in violation of our previous opinion and mandate. As discussed more fully in our analysis of Spire's second point, we affirm the PSC's factual determination that Staff's percentage-based methodology constituted the "best evidence…to calculate the costs of th[e] ineligible plastic pipe replacements." This holding is dispositive of Spire's first point, which is denied.

15

were no incremental costs of replacing and retiring plastic facilities when compared with a system that attempted to reuse those components. Because its systematic replacement of plastic components did not incur additional costs, Spire contends, no refunds are warranted.

As the party that filed the ISRS applications, Spire bore the burden of proof in this matter. § 393.150.2 ("At any hearing involving a rate sought to be increased, the burden of proof to show that the increased rate or proposed increased rate is just and reasonable shall be upon the gas corporation[.]").[12] "The party having the burden of proof carries 'the risk of nonpersuasion.' Therefore, if the evidence is 'equally balanced and the [fact-finder] is left in doubt, the litigant having the burden of proof loses; he must sustain his case by the greater weight of the evidence.'" *In re Request for an Increase in Sewer Operating Revenues of Emerald Pointe Util. Co.*, 438 S.W.3d 482, 490–91 (Mo. App. W.D. 2014) (citations omitted). Additionally, the PSC's Remand Order "has a presumption of validity" on appeal and the burden is on Spire "to prove by clear and satisfactory evidence that the order was unlawful or unreasonable." *Id*. at 489-90.

Spire alleges that the PSC erred in that it "disregarded and ignored the undisputed and unimpeached evidence presented by the Company's expert engineering witnesses[.]" This contention ignores our standard of review under which we recognize that the PSC "is free to believe none, part, or all of the testimony" presented at the hearing. *State Ex rel. Praxair, Inc. v. Pub. Serv. Comm'n of the State of Missouri*, 328 S.W.3d 329, 342 (Mo. App. W.D. 2010).[13] "If

---

[12] *See also Clapper v. Lakin*, 343 Mo. 710, 723, 123 S.W.2d 27, 33 (Mo. 1938) ("The burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue[.]").

[13] Spire cites *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902 (Mo. App. E.D. 2008) for the proposition that the PSC may not "arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who were not impeached[.]" *See id*. at 907 ("The Commission may not arbitrarily disregard and ignore competent,

16

the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010). To the extent that Spire assigns error to the PSC for not crediting the testimony of the company's witnesses, the claim is unavailing.

Furthermore, the Remand Order does not suggest that the PSC "disregarded" or "ignored" Spire's expert testimony. The PSC stated that Spire had not conducted a review to determine whether the plastic piping it replaced was in a worn out or deteriorated condition and noted the acknowledgement of Spire's own witness (Craig Hoeferlin) that the plastic facilities "should last indefinitely." It found further that Spire had not presented evidence to determine whether some of the plastic components it was replacing were incidental to and required to be replaced in conjunction with the replacement of nearby pipe that *was* worn out or deteriorated. *See Spire I*, 539 S.W. at 839 n.5 ("We recognize that the replacement of worn out or deteriorated components will, at times, necessarily impact and require the replacement of nearby components that are not in a similar condition. Our conclusion here should not be construed to be a bar to ISRS eligibility for such replacement work that is truly incidental and specifically required to complete replacement of the worn out or deteriorated components."). The PSC ruled that Spire had not attempted to quantify the amount of pipe it replaced that was ISRS-eligible or the amount of pipe it replaced that was not. The Remand Order made note of the report Spire

---

substantial, and undisputed evidence of witnesses who are not shown by the record to have been impeached[.]"). But *Cardwell* recognized that an agency "is free to *disbelieve* uncontradicted and unimpeached testimony[,]" particularly where "the record is not wholly silent on the issue of credibility." *Id*. at 907-08 (emphasis added). In its Remand Order, the PSC specifically stated: "Any finding of fact for which it appears that the Commission has made a determination between conflicting evidence is indicative that the Commission attributed greater weight to that evidence and found the source of that evidence more credible and more persuasive than that of the conflicting evidence." The PSC's adoption of Staff's percentage model as against a different approach proposed by Spire reflects the PSC's belief that Staff's evidence was more credible and carried greater weight.

presented at the hearing purporting to show that the company reduced, rather than increased, its replacement costs in nine out of the ten work orders that its expert analyzed. However, it concluded that this sample size was far too small "to extrapolate…and reach a similar result in the hundreds of work orders that Spire Missouri did not analyze."

In sum, the PSC found that Spire had not presented evidence sufficient to support its claim that its replacement of plastic components (without regard to whether they were worn out or deteriorated) reduced its ISRS costs. It found also that Spire had not even attempted to quantify its ISRS costs attributable to the replacement of plastic components that were not worn out or deteriorated, despite our previous holding that those costs were not ISRS-eligible. Spire bore the burden of proving that the costs it was attempting to recover were ISRS-eligible and the PSC found that it had not adduced sufficient evidence to carry that burden. The PSC did not err in rejecting Spire's argument that it incurred no incremental costs by replacing rather than reusing ISRS-ineligible plastic facilities.

We next consider whether the PSC's chosen methodology for calculating a disallowance was lawful and supported by substantial evidence. On this point, the PSC made the following findings:

> Here, Staff provided the best evidence of a methodology to calculate the costs of those ineligible plastic pipe replacements. Staff reviewed all of the work order authorizations provided by the company to determine the feet of main and service lines replaced and retired by the type of pipe, and then applied the actual individual plastic main and services line percentages to the work order cost to determine the value of the replacement pipe for the work order.

"This court will not substitute its judgment for that of the Commission*." State ex rel. GS Techs. Operating Co. v. Pub. Serv. Comm'n of State of Mo.*, 116 S.W.3d 680, 687 (Mo. App. W.D. 2003). Further, "[w]e must defer to the Commission's decisions regarding the credibility of

witnesses and not second-guess issues that are within the PSC's area of expertise." *In Matter of Kansas City Power & Light Co.'s Request for Auth. to Implement a Gen. Rate Increase for Elec. Serv.*, 509 S.W.3d at 770. Accordingly, we afford deference to the PSC's chosen methodology for calculating an ISRS disallowance. *Id*.

Staff's witness, David Sommerer, acknowledged that the percentage methodology did not perfectly reflect the costs of ineligible plastic pipe replacements. At the evidentiary hearing, a PSC Chairman observed, "There clearly are problems with the methodology and they've been aired publicly all day today. I'm struggling with any other methodology that makes more sense." Kim Bolin similarly testified that Staff's percentage-based model "was the only method [Staff] could come up with."

We again stress that it was Spire's burden to prove that some or all of its plastic replacements were eligible for ISRS recovery. Spire chose to rest on its theory that no ISRS collections should have been disallowed because its replacement of ineligible plastics did not increase ISRS costs. The PSC found that this theory was not supported by sufficient data. Spire did not conduct a case-by-case review to determine exactly which of its plastic replacements involved components that were in fact worn out or deteriorated. The PSC was therefore precluded from taking a more nuanced approach to the disallowance issue than the percentage-based method advocated by the OPC and Staff. We cannot conclude that the PSC erred in determining that the percentage model constituted "the best evidence of a methodology to calculate the costs of th[e] ineligible plastic pipe replacements." Given the lack of evidence adduced by Spire, the percentage-based model was the only method the PSC could employ to calculate the cost of ISRS-ineligible replacements, and thereby calculate a disallowance in accordance with our opinion and mandate in *Spire I*. The PSC's calculation of Spire's ISRS

19

disallowance was supported by substantial competent evidence and is not arbitrary or unreasonable.

In its third point on appeal, Spire argues that it was deprived of a fair trial and that its due process rights were violated in that, *inter alia*, it had "only five business days to prepare and file testimony."[14] This claim is unpersuasive. The issue of Spire's replacement of ISRS-ineligible plastic components was litigated in the first evidentiary hearing held on January 3, 2017. Following that hearing, the PSC entered an order finding that Spire could recover ISRS costs associated with the incidental replacement of plastic facilities undertaken in conjunction with the replacement of worn out and deteriorated cast iron and steel pipe. We reversed this finding in *Spire I*, holding that Spire could not legally recover the cost of plastic replacements that were not worn out or deteriorated. Our opinion was handed down in November 2017 and our mandate issued in March 2018. As the hearing on remand was held in August 2018, Spire had been on notice for approximately nine months that the PSC would be considering a disallowance reflecting Spire's replacement of ineligible plastics. In addition, Spire (along with the other parties) submitted initial post-remand briefing and participated in oral arguments held prior to the August 2018 evidentiary hearing. The parties participated in another round of briefing immediately before the evidentiary hearing, and then also submitted post-hearing briefing. We are satisfied that Spire was afforded a full and fair opportunity to be heard on the issue of the ineligible plastic replacements. *State ex rel. Fischer v. Pub. Serv. Comm'n of Missouri*, 645 S.W.2d 39, 43 (Mo. App. W.D. 1982) ("Due process requires that administrative hearings be fair and consistent with rudimentary elements of fair play. One component of this due process

---

[14] The PSC issued an order on August 17, 2018, requiring the parties to submit the written direct testimony of their witnesses on August 22, 2018.

requirement is that parties be afforded a full and fair hearing at a meaningful time and in a meaningful manner.") (internal citation omitted).

Spire also complains that the PSC applied the percentage-based method to "blanket work orders," which Spire's expert (Glenn Buck) described as unplanned projects (undertaken, for example, in response to "leak surveys" or "leak crawls") where the company discovers and rectifies leaks or other defects in its facilities. Spire contends that all of the costs incurred in completing these blanket work orders are ISRS-eligible, and that the PSC therefore erred in disallowing a percentage of those costs. In making this argument, Spire simply assumes that any time a pipe is leaking or damaged in some way it is worn out or deteriorated within the meaning of section 393.1009.5(a) and that the costs of replacing such infrastructure are recoverable under ISRS.[15] This is incorrect. *In Matter of Verified Application & Petition of Liberty Energy (Midstates) Corp.*, 464 S.W.3d 520, 525 (Mo. banc 2015) (clarifying that a replacement project is only ISRS-eligible under section 393.1009.5(a) when the replaced infrastructure has become deteriorated through "a gradual process that happens over a period of time rather than an immediate event.").

_____

[15] Spire's expert testimony conflicted on this issue. Spire's expert, Craig Hoeferlin, initially testified in response to questions posed by the PSC:

> Q. So are you essentially saying that whenever there's a leak then that, by definition, makes it worn out and deteriorated?
> A. If it's on the bare steel or the cast iron, yes. If it's on a plastic main, no, it would not be worn and deteriorated. If we find a leak on a plastic fitting, that would not be covered under the ISRS blanket work orders.

However, Spire then elicited testimony from another expert witness (Glenn Buck) as follows:

> Q. Okay. Let me ask you another direct question about the blanket work order issue. Are the facilities that are included in the blanket work orders worn out or in deteriorated condition?
> A. For the blankets I would believe so, yes.
> Q. And that would include the plastic that's in the blankets?
> A. That's correct.

Finally, Spire asserts that the PSC's rejection of the company's analysis of ten work orders (purporting to show a net savings occasioned by its wholesale replacement program when compared with a piecemeal replacement program) was arbitrary and capricious. In essence, Spire argues that the PSC commonly accepts and relies upon representative samples "when evaluating large databases like those involved in an ISRS filing." Spire therefore challenges the PSC's finding in this case that the company had submitted "far too few work orders" to treat the sampling as truly representative and conclude that Spire's neighborhood replacement program produced no net costs for its ratepayers. However, even if Spire's contention is true, we will not fault the PSC for departing from a practice it has followed in other rate cases. "An administrative agency is not bound by *stare decisis*. Courts are not concerned with alleged inconsistency between current and prior decisions of an administrative agency so long as the action taken is not otherwise arbitrary or unreasonable." *State ex rel. GTE N., Inc. v. Missouri Pub. Serv. Comm'n*, 835 S.W.2d 356, 371 (Mo. App. W.D. 1992) (citations and quotation marks omitted). As we have explained more fully above, the PSC's chosen methodology for calculating a refund to Spire's customers was not arbitrary or unreasonable.[16]

---

[16] Spire relatedly contends that its due process rights were violated because the PSC "ignor[ed]" its statistical studies purporting to "demonstrate[] the impact of plastic replacements on ISRS costs and charges." Spire argues that this was in violation of § 536.070(11), which provides:

> The results of statistical examinations or studies, or of audits, compilations of figures, or surveys, involving interviews with many persons, or examination of many records, or of long or complicated accounts, or of a large number of figures, or involving the ascertainment of many related facts, shall be admissible as evidence of such results, if it shall appear that such examination, study, audit, compilation of figures, or survey was made by or under the supervision of a witness, who is present at the hearing, who testifies to the accuracy of such results, and who is subject to cross-examination, and if it shall further appear by evidence adduced that the witness making or under whose supervision such examination, study, audit, compilation of figures, or survey was made was basically qualified to make it. All the circumstances relating to the making of such an examination, study, audit, compilation of figures or survey, including the nature and extent of the qualifications of the maker, may be shown to affect the weight of such evidence but

22

Spire has not met its burden of rebutting the presumption of validity we grant to the PSC's decision. It has not demonstrated that the PSC's calculation of disallowed ISRS surcharges was unlawful, unreasonable, arbitrary or capricious, undertaken without a fair hearing, or unsupported by substantial and competent evidence. *Laclede Gas Co.*, 523 S.W.3d at 32.

Spire's first, second, and third points on appeal are denied.

## Conclusion

The PSC's decision is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.

---

such showing shall not affect its admissibility[.]

The PSC responds that the requirements prescribed in § 536.070(11) did not apply in this case because the PSC was not obligated to hold an evidentiary hearing on remand. *See* § 393.1015.2(3). We need not resolve this issue, as nothing in the PSC's Remand Order indicates that it ignored the analyses submitted by Spire; it simply found Staff's expert evidence more credible and persuasive than Spire's. The PSC's determinations are presumptively valid. *In re Request for an Increase in Sewer Operating Revenues of Emerald Pointe Util. Co.*, 438 S.W.3d at 490–91. Thus, absent some evidence to the contrary, we must presume that it considered all relevant evidence in reaching its decision.